**Vickie Dawn JACKSON, Appellant,**

v.

**The STATE of Texas, State.**

No. 2–02–446–CR.

Court of Appeals of Texas,
Fort Worth.

June 3, 2004.

Discretionary Review Refused
Oct. 6, 2004.

---

Michael B. Curtis, Wichita Falls, for Appellant.

Janelle M. Haverkamp, Dist. Atty., and Brent Hill, Asst. Dist. Atty. of Cooke County, Gainesville, for State.

PANEL A: CAYCE, C.J.; HOLMAN and GARDNER, JJ.

### OPINION

ANNE GARDNER, Justice.

Appellant Vickie Dawn Jackson pleaded guilty to theft between $1,500 and $20,000, a state jail felony, and was assessed a one-year sentence in the State Jail Division of the Texas Department of Criminal Justice. With the trial court's permission, Appellant raises five points on appeal concerning her guilty plea. We will affirm.

### I. Factual Background and Procedural History

On July 16, 2002, Appellant was charged with two counts of capital murder in Montague County, Texas.[1] On July 19, 2002, Appellant was indicted in Cooke County, Texas for the state jail felony offense of theft of over $1,500 but less than $20,000. The 235th District Court of Cooke County appointed James Martin to represent Appellant in the theft case. Martin, however, did not represent Appellant in any capacity in the Montague County cases. On August 23, 2002, Appellant pleaded guilty to the Cooke County theft offense, and the court sentenced her to a one-year term of confinement in state jail. Prior to being sentenced, Appellant signed written admonishments, waivers, and a judicial confession.

Soon thereafter, Appellant's court-appointed Montague County attorneys, Bruce Martin and Michael Curtis, filed a motion for new trial in the Cooke County theft case asserting that her plea of guilty was not made knowingly, intelligently, and voluntarily and that James Martin had rendered ineffective assistance in the plea proceedings. Appellant attached an affidavit to her motion for new trial alleging that, despite James Martin's knowledge of the capital murder charges, "[he] did not advise me against entering a plea of guilty," and "[he] did not advise me of the consequences that entering a guilty plea and receiving a felony theft conviction would have in regard to my pending Capital Murder case[s]." Appellant further alleged that if James Martin had advised her "that a plea of guilty and a conviction could be used against me in the Capital Murder cases, I would never have entered a plea of guilty."

James Martin also signed an affidavit, which was attached to Appellant's motion for new trial.[2] He stated that he was Appellant's court-appointed attorney in the Cooke County case and that he knew "that she was the nurse accused of Capital Murder in ... Montague County, Texas." Martin alleged that he "did not advise her of the consequences that entering a guilty plea and receiving a felony theft conviction would have in regard to her Capital Murder cases." Further, Martin stated that he did not advise her against entering a plea of guilty and did not "even think

---

1. Each indictment alleged that Appellant had intentionally or knowingly caused the deaths of two persons.

2. While the State did not object or otherwise complain about Martin's affidavit, we note that it lacks the stamp and signature of a notary public. *See* TEX. GOV'T CODE ANN. § 312.011(1) (Vernon 2002) (defining affidavit

as "a statement in writing of a fact or facts signed by the party making it, sworn to before an officer authorized to administer oaths, and officially certified to by the officer under his seal of office"); *Venable v. State*, 113 S.W.3d 797, 800–01 (Tex.App.-Beaumont 2003, no pet.) (stating that "[t]he absence of the notarial seal renders an affidavit defective").

about the consequences of such a plea." According to Martin's affidavit, "[h]ad [he] given real thought to such consequences, [he] should have, and would have, advised her against entering her plea of guilty in this case."

On October 29, 2002, the court conducted a hearing on the motion for new trial.[3] During the hearing, Appellant subpoenaed two witnesses: James Martin and Tim Cole, the District Attorney for the judicial district that encompasses Montague County. While the clerk's record also indicates that the trial court issued a bench warrant to secure Appellant's presence at the October 29 hearing, Appellant did not testify at the hearing. Further, Appellant did not introduce either affidavit attached to her motion for new trial into evidence.

Martin testified that he knew Appellant was accused of capital murder in Montague County. Martin also testified that he did not advise Appellant of the consequences that a guilty plea in the theft case would have on her capital murder cases. Martin stated that the theft charge was a state jail felony and carried a maximum of two years' imprisonment. He said that the State's plea bargain offer was one year, which is the sentence Appellant received. Martin stated that, in his opinion, "she was probably going to be convicted one way or another of the theft charge here prior to the trial in the capital murder." Martin acknowledged that, among other consequences, a felony conviction would prohibit Appellant from filing an application for probation or community supervision in the Montague County cases.[4]

In hindsight, Martin testified that if he had thought about the consequences of the guilty plea, he would have advised Appellant against entering a guilty plea in the theft case.

On cross-examination, the State questioned Martin about the timing of the theft indictment and his appointment. When Martin could not remember the exact dates and said he needed to see the records, the State said it "could just skip this area" if the court would take judicial notice of "not only the specific items mentioned, but the court's entire file." The court stated, "All right. I'll take judicial notice of my file."

The State resumed its cross-examination and inquired about the scope of Martin's representation of Appellant and the nature of the theft charges against her. Martin testified that he was appointed to represent Appellant only in the theft case. Martin agreed that the evidence in the theft case was "essentially overwhelming," in that she was accused of stealing $5,000 in cash from her employer, Wal–Mart, had confessed to the police, and had led the police to the money in her home, where it was recovered. He said that Appellant repeatedly instructed him, starting at her arraignment, that she was guilty and wanted to enter a guilty plea.

Martin also agreed on cross-examination that any strategy in "chang[ing] this case from a guilty plea into a trial would have essentially been for nothing but the purpose of delay" because "[b]arring some

---

3. Appellant's Montague County attorneys have provided her defense both at the hearing on motion for new trial and in this appeal.

4. The code of criminal procedure provides:
 A defendant is eligible for community supervision under this section only if before the trial begins the defendant files a written sworn motion with the judge that the defen-

dant has not previously been convicted of a felony in this or any other state, and the jury enters in the verdict a finding that the information in the defendant's motion is true.
TEX.CODE CRIM. PROC. ANN. art. 42.12, § 4(e) (Vernon Supp.2004).

unforeseen circumstance, [Appellant] was going to be convicted." On redirect examination, however, Martin testified that it probably would have been better "for [Appellant] to be able to file the application for probation based on the possibility and likelihood of her getting a lesser included instruction on murder in the Montague County case[s] than ... to run one year off her time on the state jail felony case."

Cole, the district attorney in Montague County, testified that Appellant was indicted on two counts of capital murder in Montague County in July 2000 before she was indicted on the theft offense in Cooke County. Cole stated that when he found out about the guilty plea and the motion for new trial in the theft case, he became concerned about how ongoing proceedings in the theft case would affect the pending capital murder cases, especially "if some appellate court should decide that [Appellant] received ineffective assistance."

Consequently, Cole made an agreement with Appellant's Montague County attorneys that he would not use Appellant's final conviction in the capital murder trials. For example, Cole stated that Appellant would not be impeached as a convicted felon should she decide to testify, and he would have "essentially treat[ed] her as a non-convicted person for purposes of that trial." Through subsequent conversations with the Montague County lawyers, Cole realized that Appellant would be unable to file an application for probation in the capital murder cases without committing perjury and that the trial court would not be bound by the non-use agreement. Cole stated that, as a result, Appellant would not be able to request probation or to voir dire the jury in the capital cases on the issue of probation, which could have been at issue if a lesser included offense of murder were submitted to the jury and the jury convicted her on that charge.

When asked whether he had an opinion concerning James Martin's representation of Appellant in the theft case, Cole said that he hesitated to call another attorney ineffective. Cole then stated, "I believe a reasonable attorney probably would not have made that plea at the time that they did it, and I certainly would not have." Cole later testified that he had never practiced as a criminal defense attorney but also stated, "I would never make a plea in any case without considering the other charges that have been filed or [are] pending against a defendant at the time they make a plea."

During cross-examination, Cole also testified that he was unaware of "the line of cases that says a lawyer doesn't have to consider anything at all except the case that's before them when they decide to plead somebody to a case." On redirect examination, Cole was asked, "And do you think that the gaining of a one-year jail sentence is really collateral to the effects that the guilty plea would have in a capital murder case?" Cole responded, "I don't think in this case that it is collateral. I think it might be in some other situations.... I think it's a very important matter in this case."

After hearing and considering all of the evidence and testimony presented, the court denied Appellant's motion for new trial. Subsequently, Appellant sought the court's permission to appeal its ruling denying her motion for new trial, and on November 13, 2002, the trial court granted Appellant's request. *See* TEX.R.APP. P. 25.2(a)(2)(B).

## II. Points on Appeal

On appeal, Appellant challenges the denial of her motion for new trial in five interrelated points. Appellant's general contention on appeal is that the trial court abused its discretion in denying her motion

for new trial because her guilty plea was invalid. In support of this position, Appellant asserts that her plea of guilty was not free, knowing, and voluntary because neither the trial court nor her trial counsel informed her of the consequences that her guilty plea in the theft case would have on her pending capital murder cases.

## III. Standard of Review

■■■ We review the trial court's decision to deny Appellant's motion for new trial under an abuse of discretion standard. *Lewis v. State*, 911 S.W.2d 1, 7 (Tex.Crim. App.1995); *Thomas v. State*, 31 S.W.3d 422, 428 (Tex.App.-Fort Worth 2000, pet. ref'd). We do not substitute our judgment for that of the trial court; rather, we decide whether the trial court's decision was arbitrary or unreasonable. *Lewis*, 911 S.W.2d at 7. The trial court's ruling is presumed to be correct, and the burden rests on Appellant to establish the contrary. *Lee v. State*, 167 Tex.Crim. 608, 322 S.W.2d 260, 262 (1958); *Edwards v. State*, 37 S.W.3d 511, 515 (Tex.App.-Texarkana 2001, pet. ref'd).

## IV. Analysis

In her first two points, Appellant asserts that the record indicates that she did not knowingly and voluntarily plead guilty because the trial court did not admonish her about the consequences that a guilty plea in her theft case would have on her pending capital murder cases.[5] In her third, fourth, and fifth points, Appellant complains that if the trial court did not have such a duty, her trial counsel did, and that he provided her ineffective assistance of counsel by failing to inform her of the consequences that her guilty plea would have on her pending capital murder cases, thereby rendering her plea involuntary.[6] We will address Appellant's arguments in turn.

### A. Voluntariness: Admonitions Under Article 26.13

■■■ The law is well settled that a guilty plea must be freely, knowingly, and voluntarily made. *Brady v. United States*, 397 U.S. 742, 748, 90 S.Ct. 1463, 1468–69, 25 L.Ed.2d 747 (1970); *Mitschke v. State*, 129 S.W.3d 130, 132 (Tex.Crim.App.2004). The admonitions required by article 26.13(a) of the code of criminal procedure apply in guilty pleas for felony offenses and may be made orally or in writing. TEX.CODE CRIM. PROC. ANN. art. 26.13 (Vernon 1989 & Supp.2004); *State v. Jimenez*, 987 S.W.2d 886, 888 (Tex.Crim.App.1999).

---

5. Point One: "The evidence in support of Appellant's conviction was legally and factually insufficient where it was shown that Appellant's plea of guilty was not made knowingly, intelligently, and voluntarily."

 Point Two: "The Trial Court abused its discretion in denying Appellant's Motion for New Trial where the evidence showed that Appellant's plea of guilty was not made knowingly, intelligently, and voluntarily."

6. Point Three: "Appellant's plea of guilty was not made voluntarily where the evidence showed that [the] plea was the product of ineffective assistance of counsel and Appellant was not made aware of the consequences such a plea of guilty would have in her pending capital murder trials."

 Point Four: "The Trial Court abused its discretion in denying Appellant's Motion for New Trial where the evidence showed that Appellant received ineffective assistance of counsel when she was not advised of the consequences her plea of guilty to [the] felony theft offense would have in her pending trial for capital murder."

 Point Five: "The Appellant received ineffective assistance of counsel in violation of the United States Constitution, Amendments Six and Fourteen, and Article 1, Section 10, Texas Constitution, where she was not advised of the consequences her plea of guilty to [the] felony theft offense would have in her pending trial for capital murder."

When the record reflects that a defendant was properly admonished, it presents a prima facie showing that the guilty plea was knowing and voluntary. *Martinez v. State*, 981 S.W.2d 195, 197 (Tex.Crim.App. 1998); *Ribelin v. State*, 1 S.W.3d 882, 884 (Tex.App.-Fort Worth 1999, pet. ref'd). The burden then shifts to the defendant to establish that, notwithstanding the statutory admonishments, he or she did not understand the consequences of the plea. *Martinez*, 981 S.W.2d at 197; *Ribelin*, 1 S.W.3d at 884.

Here, the clerk's record contains Appellant's signed "felony-plea of guilty, ... waiver, stipulation of evidence and judicial confession," in which she was admonished in conformity with article 26.13(a). *See* TEX.CODE CRIM. PROC. ANN. art. 26.13(a). Appellant's attorney, the State's attorney, and the trial court all reviewed and signed the document. At the plea hearing, Appellant stated that her trial counsel had fully explained the instrument containing her written plea of guilty, waiver of rights, and judicial confession, and she further acknowledged that she was satisfied with trial counsel's representation. Appellant informed the court that she understood all of the instrument's contents before she signed it, and she stated that she knew the range of punishment and needed no further explanation from the trial court. To the extent that Appellant's points challenge noncompliance with article 26.13(a), we conclude they are without merit. *See Hernandez v. State*, 986 S.W.2d 817, 821 (Tex.App.-Austin 1999, pet. ref'd).

**B. Voluntariness: Non–Capital Guilty Plea's Effect on the Pending Capital Murder Cases**

The crux of Appellant's appeal is her argument that the trial court and her trial counsel should have informed her of the consequences that her guilty plea in the theft case would have on her pending capital murder cases and that their failure to so inform her rendered her guilty plea invalid. The State responds that because the consequences from Appellant's guilty plea to the theft charge on her pending capital murder cases were collateral, neither the trial court nor Appellant's trial counsel was required to advise Appellant of those consequences.

"[A] guilty plea must be made with a clear understanding of direct consequences of the plea." *Mitschke*, 129 S.W.3d at 132 (citing *Brady*, 397 U.S. at 748, 90 S.Ct. at 1468–69). Further, a guilty plea is generally "considered voluntary if the defendant was made fully aware of the direct consequences." *Jimenez*, 987 S.W.2d at 888. On the other hand, ignorance of a collateral consequence does not render the plea involuntary. *Id.; Ex parte Morrow*, 952 S.W.2d 530, 536 (Tex. Crim.App.1997), *cert. denied*, 525 U.S. 810, 119 S.Ct. 40, 142 L.Ed.2d 31 (1998). As one federal appeals court has stated, "[t]he distinction between a collateral and a direct consequence of a criminal conviction, like many of the lines drawn in legal analysis, is obvious at the extremes and often subtle at the margin." *United States v. Russell*, 686 F.2d 35, 38 (D.C.Cir.1982); *see generally Morrow*, 952 S.W.2d at 536 (providing list of consequences courts have deemed collateral); 5 WAYNE R. LAFAVE, JEROLD H. ISRAEL, & NANCY J. KING, CRIMINAL PROCEDURE § 21.4(d), at 171–72 (2d ed.1999) (listing consequences that courts have determined to be direct or collateral). In this case, we—like courts in Texas and across the United States—must delineate between direct and collateral consequences and determine which category applies to the facts of this case. *See Mitschke*, 129 S.W.3d at 133–35; *Jimenez*, 987 S.W.2d at 888–89 & nn. 5–6; *Morrow*, 952 S.W.2d at 536; *see generally* LAFAVE, *supra*, § 21.4(d); Gabriel J. Chin & Richard W.

Holmes, Jr., *Effective Assistance of Counsel and the Consequences of Guilty Pleas*, 87 CORNELL L.REV. 697, 706–08 (2002) (listing the numerous jurisdictions that apply the "collateral consequences rule").

In *Morrow*, the appellant was charged with capital murder, aggravated robbery, and two attempted capital murders. 952 S.W.2d at 533. The capital murder charge was disposed of first, with Morrow being found guilty and sentenced to death by a jury. *Id.* While that conviction was on appeal, Morrow pleaded guilty to the three remaining charges. *Id.* Four and one-half years later, Morrows's capital murder conviction was reversed by the court of criminal appeals, and he was eventually retried. *Id.* (citing *Morrow v. State*, 753 S.W.2d 372, 377 (Tex.Crim.App.1988)). During the second capital murder trial, the State offered into evidence his three guilty pleas, judicial confessions, and sentences. *Id.*

Morrow filed a post-conviction application for writ of habeas corpus, challenging the voluntariness of his three guilty pleas on the basis that trial counsel rendered ineffective assistance by not advising him "prior to the entry of his guilty pleas, that such pleas could be used [against him] at a potential capital murder retrial." *Id.* at 535. The court of criminal appeals analyzed whether such a consequence was direct or collateral, stating that "[a] consequence is 'collateral' if it is not a definite, practical consequence of a defendant's guilty plea." *Id.* (citing *Cuthrell v. Dir., Patuxent Inst.*, 475 F.2d 1364, 1366 (4th Cir.), *cert. denied*, 414 U.S. 1005, 94 S.Ct. 362, 38 L.Ed.2d 241 (1973)).[7] Ultimately, the court rejected Morrow's ineffective assistance claim on the rationale that Morrow's "counsel was under no duty to in-form [him] of the various ways his three guilty pleas could be used against him at a *possible* capital murder [re]trial because such use is 'collateral.'" *Id.* at 536 (citing *Cuthrell*, 475 F.2d at 1366) (emphasis supplied).

Two years after the *Morrow* decision, the *Jimenez* court addressed the question of "whether there is a constitutional right to be admonished of the immigration consequences of a misdemeanor guilty plea, and whether such a plea is rendered involuntary by the lack of admonishments about possible immigration consequences when the defendant is not a citizen of the United States." 987 S.W.2d at 888. The court held that such an admonition is not constitutionally required because "deportation is generally considered a collateral consequence" of a guilty plea and the Texas legislature has "chose[n] not to require admonishments for persons charged with misdemeanors." *Id.* at 888–89; *see* TEX. CODE CRIM. PROC. ANN. art. 26.13(a)(4) (requiring admonition that a guilty plea might result in deportation to a defendant pleading guilty to a felony offense); *see generally* LaFAVE, *supra*, § 21.4(d), at 172 (noting majority view that deportation is a collateral consequence); *cf. Hwang v. State*, 130 S.W.3d 496, 500–01 (Tex.App.-Dallas 2004, no pet.) (holding defendant was harmed by the trial court's failure to admonish him on the deportation consequences of his guilty plea where the record did not contain either written or oral admonishments concerning such consequences).

In reaching this conclusion, the *Jimenez* court differentiated between direct and collateral consequences without citing *Cuthrell. Id.* at 888–89. Instead, the court

---

7. *Cuthrell* provides, "The distinction between 'direct' and 'collateral' consequences of a plea, while sometimes shaded in the relevant decisions, turns on whether the result represents a definite, immediate and largely automatic effect on the range of the defendant's punishment." 475 F.2d at 1366.

defined each as follows: "A consequence . . . [is] 'direct' where it is 'definite, immediate and largely automatic.'" *Id.* at 888, n. 5 (citations omitted); "A consequence . . . [is] 'collateral' where 'it lies within the discretion of the court whether to impose it,' or where 'its imposition is controlled by an agency which operates beyond the direct authority of the trial judge.'" *Id.* at 889, n. 6 (citations omitted).

More recently, the court of criminal appeals addressed whether an appellant's guilty plea was involuntary because the trial court had not admonished him as to Texas's sex-offender registration requirements—admonishments which, at the time of his guilty plea, were not statutorily required to be given. *Mitschke,* 129 S.W.3d at 132–33 (stating that article 26.13(a)(5) became effective in 1999); *see* TEX.CODE CRIM. PROC. ANN. art. 62 (Vernon Supp. 2004) (governing Texas's sex-offender registration program); *see generally* LaFAVE, *supra,* § 21.4(d), at 172–73 (recognizing split of authority regarding whether a sex-offender registration requirement is a direct or collateral consequence).

In *Mitschke,* the court called into question Texas courts' reliance on *Cuthrell*— upon which Appellant relies in her brief— and recast *Morrow's* standard for direct and collateral consequences. 129 S.W.3d at 135.[8] *Mitschke* first held, "[I]f the consequence is definite and largely or completely automatic, then it is a direct consequence. This standard is close to the standard set out in *Morrow*; a direct consequence is one that is 'a definite, practical consequence of a defendant's plea.'" *Id.* (quoting *Morrow,* 952 S.W.2d at 535). Further, *Mitschke* held that "[e]ven if the

consequence is direct, . . . imposition of it without admonishment might still be justified as remedial and civil rather than punitive." *Id.* (citations omitted). "A trial court is not required to admonish a defendant about every possible consequence of his plea, direct or collateral, only about those direct consequences that are punitive in nature or specifically enunciated in the law." *Id.* at 136.

Applying this analysis to the sex-offender registration consequence, the court explained that such a consequence was "definite, . . . completely automatic, . . . [and] 'practical' in the sense that it is logically connected to the plea." *Id.* at 135. The court concluded that "although the sex-offender registration requirement is a direct consequence of appellant's plea, it is a non-punitive measure, and failure to admonish does not necessarily render a plea involuntary"; thus, the failure to admonish Mitschke "did not violate due process or render his plea involuntary." *Id.* at 136.

Other than dicta in *Morrow,* 952 S.W.2d at 535, n. 6, we have not found a Texas case addressing the specific consequences at issue in this case, those being the consequences of a guilty plea in a non-capital case on a pending capital case, in which the criminally accused has been indicted, but not yet tried. Professors LaFave, Israel, and King cite numerous cases for the proposition that a "defendant need not be warned . . . [of] the possible evidentiary use of [his or her] plea in later proceedings," and they state that "clearly the defendant need not be warned that if he does not mend his ways, his prior criminal conduct and later actions could add up to a serious offense." LaFAVE, *supra,*

---

8. *Mitschke* also disregards a portion of the analysis from *Ruffin v. State,* 3 S.W.3d 140, 143 (Tex.App.-Houston [14th Dist.] 1999, pet. ref'd)—another case that Appellant cites in her brief—because the *Ruffin* court, relying on *Cuthrell,* "confounds the duty to register [as a sex-offender] with the possible consequences for failure to register." *Mitschke,* 129 S.W.3d at 134.

§ 21.4(d), at 171. Undoubtedly, this rationale underpins *Morrow,* in which the court rejected Morrow's ineffective assistance claim because he "ha[d] not proven ... that counsel's alleged failure to advise him, *ad infinitum,* of the various ways such guilty pleas could be used against him at a hypothetical retrial, was 'outside the wide range of competence demanded of attorneys in criminal cases.'" 952 S.W.2d at 536–37 (citation omitted). Of course, in this case, that Appellant will be tried on multiple counts of capital murder is not speculative or hypothetical, in light of Cole's testimony and his efforts to protect any future convictions in the Montague County cases.

We recognize that in the foregoing discussion of collateral consequences, *Mitschke* and *Jimenez* both concern judicial admonishment, while *Morrow* primarily involves an ineffective assistance of counsel claim. *Mitschke,* 129 S.W.3d at 135–36; *Jimenez,* 987 S.W.2d at 888; *Morrow,* 952 S.W.2d at 536. Here, Appellant raises both types of claims, but our analysis differs as to each.

### 1. Admonitions Regarding the Consequences of the Guilty Plea

■ We agree with Professors La-Fave, Israel, and King that regardless of our characterization of the consequences at issue as being either "direct" or "collateral," "it is simply impracticable for a trial judge to advise the defendant of all possible consequences, especially because often the judge will not be aware at the time of the plea of the special circumstances which would make some of those consequences possible." LaFave, *supra,* § 21.4(d), at 173. Upon our review of the record, it is not evident that the Cooke County trial court knew of the pending capital murder cases in Montague County at the time of Appellant's plea proceedings. While the clerk's record contains a bench warrant issued to the sheriff of Montague County for Appellant's release on the date of the plea proceedings, nothing in the record suggests that the Cooke County court had knowledge of the nature or circumstances of the charges pending in Montague County.

■ We will not impose a duty on a trial court to admonish a defendant about the consequences a guilty plea could have on possible later proceedings when the trial court has no knowledge of the nature of the charges, the likelihood of trial or dismissal, or any other pertinent circumstances surrounding the other charges.[9] *See, e.g., King,* 17 F.3d at 154–55 (holding trial court in one county need not tell defendant that instant conviction could be aggravating circumstances in a later case from another county, where trial court did not know of the State's intended use of the guilty plea, even if the later case concerns a capital offense under investigation at the time of the plea). We therefore reject Appellant's claim that her plea was invalid because the Cooke County trial court did not admonish her on the consequences her guilty plea would have on the Montague County cases. Accordingly, we overrule Appellant's first and second points.

9. We decline to address whether the outcome would be the same if the trial court had knowledge of the circumstances concerning the pending capital murder cases at the time of the plea proceedings because those facts are not present in this case. *Cf. King v. Dutton,* 17 F.3d 151, 155 (6th Cir.) (refusing to impose "an affirmative duty on state sentencing judges to inform criminal defendants of the possible use of their convictions in pending cases," even if the judges know of the nature of the pending cases), *cert. denied,* 512 U.S. 1222, 114 S.Ct. 2712, 129 L.Ed.2d 838 (1994).

## 2. Ineffective Assistance Regarding the Consequences of the Guilty Plea

We now turn to Appellant's argument that her guilty plea was invalid due to her trial counsel's ineffective assistance in failing to advise her of the consequences that a guilty plea in her felony theft case would have on her pending capital murder cases—cases of which trial counsel was aware. A defendant is entitled to effective assistance of counsel during the plea bargain process. *Hill v. Lockhart*, 474 U.S. 52, 58–59, 106 S.Ct. 366, 370–71, 88 L.Ed.2d 203 (1985); *Strickland v. Washington*, 466 U.S. 668, 697, 104 S.Ct. 2052, 2069, 80 L.Ed.2d 674 (1984); *Randle v. State*, 847 S.W.2d 576, 580 (Tex.Crim.App. 1993).

To successfully challenge the voluntariness of a guilty plea based on ineffective assistance of counsel, we must determine "(1) whether counsel's advice was within the range of competence demanded of attorneys in criminal cases and if not, (2) whether there is a reasonable probability that, but for counsel's errors, [s]he would not have pleaded guilty and would have insisted on going to trial." *Morrow*, 952 S.W.2d at 536 (citing *Hill*, 474 U.S. at 56, 106 S.Ct. at 369 and *Strickland*, 466 U.S. at 697, 104 S.Ct. at 2069); *see also Ex parte Moody*, 991 S.W.2d 856, 858 (Tex. Crim.App.1999). The precise question posed in this case is whether Appellant met her burden to prove by a preponderance of the evidence that (1) counsel's failure to inform her of the potential uses and consequences of her guilty plea in her pending capital murder cases was outside the range of competence demanded of attorneys in criminal cases; and (2) but for defense counsel's errors, she would not have pleaded guilty and would have insisted on going to trial. *Morrow*, 952 S.W.2d

at 536 (citing *Hill*, 474 U.S. at 56, 106 S.Ct. at 369).

### a. Counsel's Performance

With respect to *Hill's* first prong, "defense counsel should be expected to discuss with [his or her] client the range of risks attendant [his or her] plea." LaFave, *supra*, § 21.4(d), at 173; *see also* Chin, *supra*, at 731 (noting that "it is the responsibility of defense counsel to inform a defendant of the advantages and disadvantages of a plea agreement and the attendant statutory and constitutional rights that a guilty plea would forgo"). "A defense attorney's representation is quite unlikely to be constitutionally insufficient because of counsel's failure to anticipate and advise the defendant regarding 'collateral' aspects of the prosecution and a conviction on a plea." 42 George E. Dix & Robert O. Dawson, Texas Practice: Criminal Practice & Procedure § 24.101, at 282–83 (2d ed.2001) (analyzing *Morrow*); *see also Hill*, 474 U.S. at 56, 106 S.Ct. at 369.

*Morrow*, however, declined to decide the broader question of "whether a lawyer, when representing a client charged with both capital and non-capital cases, has a duty to explain the effect of guilty pleas in the non-capital cases on the capital case?" 952 S.W.2d at 535, n. 6. This is the exact question that presents itself in this case. The court of criminal appeals observed that, in a case where a defendant's capital case was pending at the time the defendant pleaded guilty in a non-capital case, "it is *arguable* that counsel would have had a duty to inform [the defendant] of the State's possible use of [his or her] guilty plea[ ] and judicial confession[ ]." *Id.*

Here, the clerk's record indicates that, prior to the Cooke County plea proceedings, Appellant's trial counsel visited with her in the Montague County jail. Appellant's counsel testified at the hearing on

her motion for new trial that he knew, before and at the time of her guilty plea, about her pending capital murder cases, and he further stated that he knew she would be prevented from filing an application for community supervision in the capital murder trial(s) because of her guilty plea. *See* Tex.Code Crim. Proc. Ann. art. 42.12, § 4(e). Appellant's trial counsel testified that, even though he was fully aware of the pending capital murder cases in Montague County, he did not advise Appellant of the consequences that a guilty plea in the Cooke County case would have on the pending capital cases in Montague County. Appellant's trial counsel testified that he should have considered such consequences and advised against a guilty plea.

Cole, the State's attorney in Montague County, likewise testified that "a reasonable attorney probably would not have made that plea at the time that they did it." Cole acknowledged some of the other potential uses of Appellant's guilty plea when he testified about the non-use agreement he had made with Appellant's Montague County attorneys. Moreover, Cole agreed that, despite the non-use agreement, Appellant would still be prohibited from filing an application for community supervision, and he stated that he was unsure as to whether the non-use agreement "would absolutely prevent the [Montague County court] from allowing her to . . . be treated as a non-convicted person."

 Following *Mitschke*, we agree with *Morrow's* observation that Appellant's trial counsel had a duty to inform Appellant of the consequences that her guilty plea in her non-capital felony case would have on her pending capital murder cases because such consequences were direct and punitive. *See Mitschke*, 129 S.W.3d at 135–36; *Morrow*, 952 S.W.2d at 535 n. 6. The consequence of Appellant's not being able to file the application for community supervision in her pending capital murder cases because of her guilty plea in the theft case is definite and completely automatic. *See Mitschke*, 129 S.W.3d at 135. A defendant cannot file an application for community supervision if he or she has previously been convicted of a felony in this or any other state. *See* Tex.Code Crim. Proc. Ann. art. 42.12, § 4(e). To borrow from *Mitschke*, "there are not exceptions, no wiggle room, no conditions which relieve" Appellant of that prohibition. 129 S.W.3d at 135. The consequence is also "practical" because it is logically connected to her plea and the resulting conviction. *See id.* Finally, this direct consequence is not among those that could be characterized as remedial. *See id.* (stating that sex-offender registration requirements, loss of voting rights, inability to possess firearms, ineligibility for certain professional licenses, etc. are non-punitive consequences). Focusing solely on the application for community supervision, without even considering the potential evidentiary uses of Appellant's guilty plea, we conclude that Appellant's inability to file an application for community supervision in her capital murder cases is a direct and punitive consequence of her guilty plea. *See id.* at 136.

Accordingly, on the factual record before us, we hold that Appellant's trial counsel, who had knowledge of Appellant's pending capital murder cases in Montague County, performed outside the range of competence demanded of attorneys in criminal cases by failing to inform Appellant of the consequences of her guilty plea on her pending capital murder cases. *See Hill*, 474 U.S. at 56, 106 S.Ct. at 369; *Morrow*, 952 S.W.2d at 536.

### b. Prejudice

 Having held that Appellant met her burden on the first *Hill* prong, we now address whether Appellant established

prejudice under *Hill.* *See Hill,* 474 U.S. at 56, 106 S.Ct. at 369; *Moody,* 991 S.W.2d at 858; *Morrow,* 952 S.W.2d at 536. In other words, Appellant had the burden to develop facts and details necessary to show that but for counsel's failure to advise her of the consequences her guilty plea would have on her pending capital cases, she would not have pleaded guilty and would have insisted on going to trial. *See Hill,* 474 U.S. at 56, 106 S.Ct. at 369; *Moody,* 991 S.W.2d at 858; *Brink v. State,* 78 S.W.3d 478, 488 (Tex.App.-Houston [14th Dist.] 2001, pet. ref'd). In determining whether Appellant met her burden, we are to consider the circumstances surrounding her guilty plea and the gravity of the advice that Appellant did not receive as it pertained to Appellant's plea determination. *See Moody,* 991 S.W.2d at 858; *Mitich v. State,* 47 S.W.3d 137, 141 (Tex.App.-Corpus Christi 2001, no pet.).

 As we mentioned above, Appellant did not testify at the hearing on her motion for new trial. To meet her burden on the second *Hill* prong, Appellant directs us to her affidavit, in which she swore that if James Martin had advised her "that a plea of guilty and a conviction could be used against me in the Capital Murder cases, I would never have entered a plea of guilty." While Appellant did not introduce her affidavit into evidence, she argues on appeal that because the trial court took judicial notice of its file, we may consider the substance of her affidavit as evidence of prejudice under *Hill.* We disagree.

 A motion for new trial is not self-proving. *Lamb v. State,* 680 S.W.2d 11, 13 (Tex.Crim.App.1984), *cert. denied,* 470 U.S. 1009, 105 S.Ct. 1372, 84 L.Ed.2d 391 (1985); *Lincicome v. State,* 3 S.W.3d 644, 646 (Tex.App.-Amarillo 1999, no pet.). During a hearing on a motion for new trial, a trial court may receive evidence by affidavits. Tex.R.App. P. 21.7; *Godoy v. State,*

122 S.W.3d 315, 319 (Tex.App.-Houston [1st Dist.] 2003, pet. ref'd). An affidavit attached to the motion, however, is merely "a pleading that authorizes the introduction of supporting evidence" and is not evidence itself. *Stephenson v. State,* 494 S.W.2d 900, 909–10 (Tex.Crim.App.1973); *see McIntire v. State,* 698 S.W.2d 652, 658 (Tex.Crim.App.1985); *Walker v. State,* 440 S.W.2d 653, 659 (Tex.Crim.App.1969); *Portillo v. State,* 117 S.W.3d 924, 930 (Tex. App.-Houston [14th Dist.] 2003, no pet.); *Martins v. State,* 52 S.W.3d 459, 468 (Tex. App.-Corpus Christi 2001, no pet.); *Lincicome,* 3 S.W.3d at 646; *White v. State,* 657 S.W.2d 877, 879 (Tex.App.-Fort Worth 1983, no pet.). To constitute evidence, the affidavit must be introduced as evidence at the hearing on the motion. *Stephenson,* 494 S.W.2d at 909–10; *Portillo,* 117 S.W.3d at 930; *Lincicome,* 3 S.W.3d at 646; *White,* 657 S.W.2d at 879; *cf. McDougal v. State,* 105 S.W.3d 119, 120–21 (Tex.App.-Fort Worth 2003, pet. ref'd) (overruling sufficiency of evidence point regarding guilty plea where there was no record from the hearing showing whether appellant's confession was introduced into evidence or judicially noticed).

 In *White,* we held that an affidavit attached to the appellant's motion for new trial concerning juror misconduct did not constitute evidence, even though the trial court had taken judicial notice of all papers on file, because the affidavit was not introduced as evidence at the hearing on the motion for new trial. 657 S.W.2d at 879 (citing *Stephenson,* 494 S.W.2d at 909–10, and *Boone v. State,* 629 S.W.2d 786, 789–90 (Tex.App.-Houston [14th Dist.] 1981, no pet.)). A court may take judicial notice of its own records, but such is not without limit. *See* Tex.R. Evid. 201; *Turner v. State,* 733 S.W.2d 218, 221–22 (Tex. Crim.App.1987). "A judicially noticed fact must be one not subject to reasonable

dispute in that it is either (1) generally known within the territorial jurisdiction of the trial court or (2) capable of accurate and ready determination by resort to sources whose accuracy cannot reasonably be questioned." TEX.R. EVID. 201(b). In a case such as this one, in which an appellant is raising allegations of ineffective assistance of counsel via affidavit, while a court may judicially notice the existence of the affidavit in its file, the court may not take judicial notice of the truth of the factual contents contained in such an affidavit because those facts are not the kinds of facts that a court may judicially notice. *See id.; see also Tex. Dep't of Public Safety v. Claudio,* 133 S.W.3d 630, 632–33 (Tex. App.-Corpus Christi 2002, no pet.) (op. on reh'g) (holding in a civil case that, under rule 201, a court's "taking notice of the contents of the file does not elevate [averments in appellant's pleadings] into proof"); *Tschirhart v. Tschirhart,* 876 S.W.2d 507, 508 (Tex.App.-Austin 1994, no writ) (stating in a civil case that, under rule 201, "a court may take judicial notice that a pleading has been filed in the cause," but it "may not ... take judicial notice of the truth of allegations in its records").

Because Appellant did not offer her affidavit during the hearing on the motion for new trial, it is not evidence. *See Stephenson,* 494 S.W.2d at 909–10; *Portillo,* 117 S.W.3d at 930; *Lincicome,* 3 S.W.3d at 646; *White,* 657 S.W.2d at 879; *cf. Bahlo*

*v. State,* 707 S.W.2d 249, 251–52 (Tex.App.-Houston [1st Dist.] 1986, no pet.) (finding, on specific facts of case, that affidavit constituted evidence where parties and trial court had treated affidavit as evidence during motion for new trial hearing). Accordingly, we hold that Appellant has failed to show prejudice under *Hill* because she did not offer any evidence that there existed a reasonable probability that, but for her trial counsel's failure to advise her of the consequences her guilty plea would have on her pending capital cases, she would not have pleaded guilty and would have insisted on going to trial.[10] *See Hill,* 474 U.S. at 56, 106 S.Ct. at 369; *Moody,* 991 S.W.2d at 858; *Morrow,* 952 S.W.2d at 536.

We therefore conclude that the trial court did not abuse its discretion in denying Appellant's motion for new trial. *See Lewis,* 911 S.W.2d at 7; *Thomas,* 31 S.W.3d at 422. We overrule Appellant's third, fourth, and fifth points.

## V. Conclusion

Having overruled all five of Appellant's points, we affirm the trial court's judgment.

---

**10.** Even if we were to consider the contents of Appellant's affidavit as substantive evidence supporting prejudice under *Hill*—which we do not—Appellant offered no other evidence that she would not have pleaded guilty and would have insisted on going to trial. *See, e.g., United States v. Campbell,* 778 F.2d 764, 768 (11th Cir.1985) (holding that defendant failed to meet *Strickland* prejudice prong with her "bare allegation" that "she would not have pleaded guilty if her trial counsel had advised her of the deportation consequences of the plea"). For example, despite her apparent availability, Appellant did not testify at the hearing on the motion for new trial. Further, she offered no evidence of when or if the capital cases had been set for trial or when the theft case would have gone to trial.