COURT OF APPEALS
EIGHTH DISTRICT OF TEXAS
EL PASO, TEXAS

| | § | |
|---|---|---|
| MARTIN VIERA, | § | No. 08-10-00332-CR |
| Appellant, | § | Appeal from |
| v. | § | 384th District Court |
| THE STATE OF TEXAS, | § | of El Paso County, Texas |
| Appellee. | § | (TC # 20090D02432) |

## O P I N I O N

Martin Viera appeals his conviction of sexual assault (Count I), enhanced by a prior felony conviction. A jury found Appellant guilty of Count I and the trial court assessed punishment. The court found the enhancement allegation true and assessed punishment at imprisonment for fifty years. For the reasons that follow, we affirm.

### FACTUAL SUMMARY

A grand jury returned a two-count indictment against Appellant. Count I alleged that Appellant sexually assaulted his sister, Irma Enriquez, without her consent. Count II alleged that Appellant engaged in prohibited sexual conduct with his sister. The case was tried before a jury.

Forty-four year old Irma Enriquez grew up in El Paso, Texas with her younger sister and her younger brother, Appellant. On March 17, 2009, Enriquez went to lunch with her cousin, Christine Rosales. After lunch, Enriquez picked up Appellant and they went to the Ale House where they were joined by Enriquez's best friend, Irma Ontiveros, and Rosales. They drank at the Ale House for approximately an hour and a half before going to Muggs. Enriquez recalled that they drank beer and shots of liquor but she did not know how much she had drunk. She

described herself as "very intoxicated." Enriquez did not know what time they left. Despite being intoxicated, Enriquez drove home with Appellant and she recalled falling asleep on her couch after watching television. The next thing she remembered is waking up in her bed with Appellant on top of her. She specifically testified that his penis was inside her vagina and he was moving. Enriquez did not resist or fight because she was in shock. After a short period of time, Appellant rolled off of her and fell asleep. Enriquez quietly "creeped off" of her bed so as not to awaken Appellant. She went into her bathroom to get her robe because she was naked. She grabbed her phone and went outside to call 911. She told the operator that her brother had just raped her. The police and an ambulance arrived a few minutes later. Enriquez recalled that one of her neighbors waited with her. On cross-examination, Enriquez testified that she did not know how she got from the couch to her bedroom, how her clothes were removed, or who removed them.

Sometime after midnight on March 18, 2009, Enriquez's neighbor, Krystal Anne Molina, was driving home when she saw a woman dressed in a bathrobe walking towards the street. Molina continued down the street and pulled into her driveway which was about four houses down. The woman followed Molina to her house. When Molina got out of her car, she saw that the woman was talking on a cell phone and crying hysterically. Molina heard her say, "My brother. My brother. He's still in the house. My brother." Molina put her arm around the woman and asked if she was okay. The woman put all of her weight on Molina and just kept saying, "My brother." Molina could smell alcohol on the woman's breath. By that time, the police and an ambulance had arrived.

The ambulance was dispatched at 1:37 a.m. and arrived a few minutes later. Marco Isaac Hernandez, an EMT, made contact with Enriquez at the scene. He described her as hysterical

- 2 -

and agitated. Hernandez recalled that Enriquez had a slight odor of alcohol on her breath but she was alert and oriented. The ambulance transported Enriquez to the hospital and arrived there at 2:59 a.m.

The sexual assault examination of Enriquez began at 7:18 a.m. Courtney Perez, R.N., an emergency room nurse, assisted Dr. Roberto Ochoa during the exam. Dr. Ochoa did not observe any external or internal injuries during the exam but he testified that the absence of physical trauma did not mean that a sexual assault had not occurred. Dr. Ochoa found non-motile sperm in the vagina indicating that intercourse had occurred at least three hours before the exam.

The Texas Department of Public Safety Laboratory performed DNA testing on the interior vaginal swabs collected during the sexual assault examination. Nicholas Ronquillo, a forensic scientist, separated the sperm cells from the non-sperm cells in the sample. The DNA from the sperm cells found on the vaginal swabs is consistent with Appellant's DNA. The probability of selecting an unrelated person at random who could be the source of the DNA profile is approximately 1 in 1.431 quintillion for Caucasians, 1 in 264.7 quintillion for Blacks, and one in 1.976 quintillion for Hispanics. Thus, Ronquillo testified that Appellant, to a reasonable degree of scientific certainty, is the source of the sperm cell fraction of the vaginal swab.

Appellant called Christine Rosales and Irma Ontiveros to testify regarding Enriquez's degree of intoxication. Rosales said she was not qualified to guess Enriquez's degree of intoxication but Enriquez was not staggering and her speech was not slurred. She recalled that Appellant was obnoxious and tried to force her to drink a Jell-O shot with him. She told the police in a statement that Appellant was "highly intoxicated." Ontiveros testified that Enriquez was not intoxicated that evening.

The jury found Appellant guilty of Count I but found him not guilty of Count II. Appellant did not elect for the jury to assess punishment. During punishment, the State introduced into evidence a pen packet establishing that Appellant had been convicted in 2007 of aggravated assault with a deadly weapon and sentenced to serve two years in prison. His ex-wife, Anna Margarita Garcia, testified that she was the complainant in the aggravated assault case. During that assault, Appellant beat Garcia and threatened to kill her with a knife. Appellant hit her every day of their marriage and she described her daily life as torture.

Enriquez testified about the impact of the sexual assault on her life. She had become depressed and lost her job as a result of the sexual assault. She had tried to commit suicide. The offense had also ruined her parents' lives and had destroyed the entire family.

Appellant testified at the punishment stage and denied beating Garcia every day. With respect to Enriquez, Appellant described their relationship as a normal brother-sister relationship. Appellant maintained that he was extremely drunk when they left Muggs and he passed out in the car. Enriquez took him into the bedroom and put him in her bed. She got him some water and aspirin and told him if he needed to urinate or be sick to use the bathroom. Appellant felt sick and the room was spinning so he put one foot on the floor. Appellant passed out again and the next time he woke up the police were pulling him out of the bed. He could not explain how his sperm got inside of his sister. At the conclusion of the punishment stage, the trial judge stated that he found it significant that the offense occurred only four days after Appellant was released from prison. The trial court found the enhancement allegation true and assessed Appellant's punishment at imprisonment for a term of fifty years.

## SUFFICIENCY OF THE EVIDENCE

In Issue One, Appellant challenges the legal and factual sufficiency of the evidence supporting his conviction. He argues that the evidence is insufficient to prove that he penetrated the complainant's vagina with his penis and without her consent.

In *Brooks v, State*, the Court of Criminal Appeals abandoned factual sufficiency review in those cases where the burden of proof is beyond a reasonable doubt. *Brooks v. State*, 323 S.W.3d 893, 894-95 (Tex.Crim.App. 2010)(finding no meaningful distinction between the legal and factual sufficiency standards and no justification for retaining both standards, therefore overruling the factual sufficiency review adopted in *Clewis v. State*, 922 S.W.2d 126, 133 (Tex.Crim.App. 1996)). The legal sufficiency standard articulated in *Jackson v. Virginia*, 443 U.S. 307, 319, 99 S.Ct. 2781, 61 L.Ed.2d 560 (1979), is the only standard a reviewing court applies in determining whether the evidence is sufficient to support a conviction. *Brooks*, 323 S.W.3d at 894-95. Therefore, we will review the evidence under the *Jackson* legal sufficiency standard and determine whether the evidence is sufficient to support the challenged elements beyond a reasonable doubt. *See Brooks*, 323 S .W.3d 894-95, *citing Jackson*, 443 U.S. at 319, 99 S.Ct. at 2789.

*Standard of Review*

Under the *Jackson* standard, a reviewing court must consider all evidence in the light most favorable to the verdict and in doing so determine whether a rational justification exists for the jury's finding of guilt beyond a reasonable doubt. *Brooks*, 323 S.W.3d at 894-95, *citing Jackson*, 443 U.S. at 319, 99 S.Ct. at 2789. As the trier of fact, the jury is the sole judge as to the weight and credibility of witness testimony, and therefore, on appeal we must give deference to the jury's determinations. *Brooks*, 323 S.W.3d at 894-95. If the record contains conflicting inferences, we must presume the jury resolved such facts in favor of the verdict and defer to that

resolution. *Id*. On appeal, we serve only to ensure the jury reached a rational verdict, and we may not reevaluate the weight and credibility of the evidence produced at trial and in so doing substitute our judgment for that of the fact finder. *King v. State*, 29 S.W.3d 556, 562 (Tex.Crim.App. 2000). In our review, we consider both direct and circumstantial evidence and all reasonable inferences that may be drawn from the evidence. *Hooper v. State*, 214 S.W.3d 9, 13 (Tex.Crim.App. 2007). The standard of review as to the sufficiency of the evidence is the same for both direct and circumstantial evidence cases. *Id*.; *Arzaga v. State*, 86 S.W.3d 767, 777 (Tex.App.--El Paso 2002, no pet.). Each fact need not point directly and independently to the guilt of the accused, so long as the cumulative force of all the evidence, when coupled with reasonable inferences to be drawn from that evidence, is sufficient to support the conviction. *Id.*

*Elements of Sexual Assault and Relevant Law*

A person commits sexual assault if he intentionally or knowingly causes the penetration of another person's sexual organ by any means without that person's consent. TEX.PENAL CODE ANN. § 22.011(a)(1)(A)(West 2011). Count I of the indictment alleged that Appellant penetrated Enriquez's sexual organ with his sexual organ without her consent. The Penal Code sets forth several circumstances in which a sexual assault is without the complainant's consent. *See* TEX.PENAL CODE ANN. § 22.011(b)(1)-(11). In this case, Paragraphs A and B of Count I alleged lack of consent under Subsections (b)(3) and (b)(5) respectively. Under subsection (b)(3), a sexual assault is without the other person's consent if "the other person has not consented and the actor knows the other person is unconscious or physically unable to resist." TEX.PENAL CODE ANN. § 22.011(b)(3). Under subsection (b)(5), a sexual assault is without the other person's consent if "the other person has not consented and the actor knows the other person is unaware that the sexual assault is occurring." TEX.PENAL CODE ANN. §

22.011(b)(5)(West 2011). The uncorroborated testimony of the victim alone is sufficient to support a conviction for sexual assault, as long as the victim tells someone other than the defendant within a year of the offense. TEX.CODE CRIM.PROC.ANN. Art. 38.07(a)(West Supp. 2012); *Quincy v. State*, 304 S.W.3d 489, 497 (Tex.App.--Amarillo 2009, no pet.).

*The Evidence*

Enriquez testified that she was "very intoxicated" when she arrived at her house and the last thing she remembered was falling asleep or passing out on her couch. She woke up in her bed and found Appellant on top of her with his penis inside of her vagina. Enriquez testified that she would never have sex with her brother. This testimony, if believed by the jury, is sufficient to permit a jury to rationally find beyond a reasonable doubt all of the elements of sexual assault in that it proved Appellant penetrated Enriquez's sexual organ with his penis, she did not consent to the penetration, and she was unconscious or asleep when the penetration occurred, and therefore, she was either unconscious and unable to resist or unaware that it was occurring. *See* TEX.PENAL CODE ANN. § 22.011(a)(1), (b)(3), (b)(5); *Corbo v. State*, No. 14-08-00201-CR, 2009 WL 5551376, at *5-6 (Tex.App.--Houston [14th Dist.] Sept. 24, 2009, no pet.)(mem. op.)(not designated for publication)(victim's testimony that defendant drugged her, she was unconscious when he had sex with her, and she would not have had sex with him was sufficient under Article 38.07(a) to support defendant's conviction and showed lack of consent under Section 22.011(b)(3) or (b)(5)). We overrule Issue One.

**EXCULPATORY EVIDENCE**

In Issue Two, Appellant contends that the trial court erred by denying leave to depose persons of knowledge and by not compelling the State to produce exculpatory or mitigating evidence. The State first responds that the issue is multifarious and should not be reviewed.

*Multifarious Issue and Deficient Briefing*

A point of error or issue is multifarious if it embraces more than one specific ground of error. *Mays v. State*, 318 S.W.3d 368, 385 (Tex.Crim.App. 2010). By combining independent grounds together in a single issue, an appellant risks rejection of his arguments on the basis that nothing has been presented for review. *See Wood v. State*, 18 S.W.3d 642, 649 n.6 (Tex.Crim.App. 2000)(refusing to address multifarious grounds). A complaint that the trial court erred by denying a defendant's request to depose a witness is distinct from a complaint that the State failed to disclose exculpatory or mitigating evidence as required by *Brady v. Maryland*, 373 U.S. 83, 83 S.Ct. 1194, 10 L.Ed.2d 215 (1963). Thus, Issue Two is multifarious.

Appellate courts have discretion to address multifarious issues and often do so provided that the issues are adequately briefed. While Appellant has briefed the *Brady* issue, his brief does not adequately address the deposition issue. He does not direct us to where in the record he sought leave to depose a witness or the trial court ruled on such a request, nor does his brief provide any argument or authorities in support of this issue. See TEX.R.APP.P. 38.1(g), (i). As an appellate court, it is not our task to comb the record in an effort to verify an appellant's claims. *See Alvarado v. State*, 912 S.W.2d 199, 210 (Tex.Crim.App. 1995). Likewise, we are not obligated to construct and compose an appellant's issues, facts, and arguments for him. *Busby v. State*, 253 S.W.3d 661, 673 (Tex.Crim.App. 2008). Because Appellant has failed to brief the deposition argument, we decline to address it. We will, however, address the *Brady*

issue.

Appellant raised the *Brady* issue in his motion for new trial.  He alleged that the State failed to disclose a supplemental report by Officer J. Van Valen.  Appellant attached to his motion for new trial an affidavit by a private investigator who related that he interviewed Van Valen after the trial.  Van Valen told the investigator that he entered the bedroom and found Appellant covered with a bed sheet.  It appeared to Van Valen that Appellant was pretending to be asleep.  Van Valen told the investigator that Appellant was wearing a pair of shorts and a T-shirt.  He said that he included this information in a supplemental report.  In its response to the motion for new trial, the State alleged that Van Valen did not make any supplemental reports.  The trial court conducted a hearing on the motion for new trial, but Appellant did not offer any evidence in support of his *Brady* claim.  The prosecutor stated in open court that she had checked the police computer system to make sure that the State's file was complete and contained every supplemental report and witness statement and there were no supplemental reports.  The prosecutor acknowledged the investigator's affidavit and stated that Officer Van Valen did not create a supplemental report and such a supplemental report did not exist.  Appellant did not call Officer Van Valen to testify at the new trial hearing and he did not introduce the affidavit into evidence.  The trial court did not rule on the motion for new trial and it was overruled by operation of law.

An appellate court reviews a trial court's ruling on a motion for mistrial using an abuse-of-discretion standard of review.  *Webb v. State*, 232 S.W.3d 109, 112 (Tex.Crim.App. 2007).  We view the evidence in the light most favorable to the trial court's ruling and uphold that ruling if it was within the zone of reasonable disagreement.  *Id.*  We do not substitute our judgment for

that of the trial court, but rather we decide whether the trial court's decision was arbitrary or unreasonable. *Id.* Thus, a trial court abuses its discretion in denying a motion for new trial only when no reasonable view of the record could support the trial court's ruling. *Id.*

In *Brady*, the United States Supreme Court concluded that the suppression by the prosecution of evidence favorable to a defendant violates due process if the evidence is material either to guilt or punishment, without regard to the good or bad faith of the prosecution. *Harm v. State*, 183 S.W.3d 403, 406 (Tex.Crim.App. 2006), *citing Brady*, 373 U.S. at 87, 83 S.Ct. at 1196-97. A defendant must satisfy three requirements to establish a *Brady* violation: (1) the State suppressed evidence; (2) the suppressed evidence is favorable to defendant; and (3) the suppressed evidence is material. *Harm*, 183 S.W.3d at 406. There can be no *Brady* violation without suppression of favorable evidence. *Id. Brady* does not require prosecuting authorities to disclose exculpatory information to defendants that the State does not have in its possession and that is not known to exist. *Id.*, 183 S.W.3d at 406-07.

A motion for new trial is not self-proving. *Rouse v. State*, 300 S.W.3d 754, 762 (Tex.Crim.App. 2009); *Jackson v. State*, 139 S.W.3d 7, 20 (Tex.App.--Fort Worth 2004, pet. ref'd), *citing Lamb v. State*, 680 S.W.2d 11, 13 (Tex.Crim.App. 1984). During a hearing on a motion for new trial, a trial court may receive evidence by affidavits. TEX.R.APP.P. 21.7; *Jackson*, 139 S.W.3d at 20; *Godoy v. State*, 122 S.W.3d 315, 319 (Tex.App.--Houston [1st Dist.] 2003, pet. ref'd). An affidavit attached to the motion is merely "a pleading that authorizes the introduction of supporting evidence" and is not evidence itself. *Jackson*, 139 S.W.3d at 20, *quoting Stephenson v. State*, 494 S.W.2d 900, 909-10 (Tex.Crim.App. 1973). To constitute evidence, the affidavit must be introduced as evidence at the hearing on the motion. *Rouse*, 300 S.W.3d at 762; *Stephenson*, 494 S.W.2d at 909-10; *Jackson*, 139 S.W.3d at 20.

Appellant did not introduce the investigator's affidavit into evidence at the new trial hearing and he did not introduce any other evidence that would show that the supplemental report actually existed. Given the absence of evidence to substantiate the *Brady* claim, we conclude that the trial court did not abuse its discretion by failing to grant the motion for new trial. *See State v. Herndon*, 215 S.W.3d 901, 909 (Tex.Crim.App. 2007)(stating that the trial court does not abuse its discretion by granting a new trial if the defendant: (1) articulated a valid legal claim in his motion for new trial; (2) produced evidence or pointed to evidence in the trial record that substantiated his legal claim; and (3) showed prejudice to his substantial rights under the standards in Rule 44.2 of the Texas Rules of Appellate Procedure). We overrule Issue Two.

## INCONSISTENT VERDICTS AND JURY MISCONDUCT

In his third issue, Appellant complains that the trial court abused its discretion by denying his motion for new trial on the grounds of jury misconduct and inconsistent verdicts.

### *Jury Misconduct*

Appellant alleged jury misconduct in his motion for new trial and attached the affidavit of one of the jurors, Ramiro Galvan. Galvan stated that he did not believe Appellant was guilty but he was pressured by other jurors to find Appellant guilty; several jurors wondered during deliberations why Appellant had not testified; some jurors spoke about their own personal experiences; and Galvan felt some jurors were biased because they said during deliberations that they were moved by the complainant's tears. During the new trial hearing, defense counsel did not offer the Galvan affidavit into evidence and when he began to discuss it as part of his argument, the prosecutor objected to the court considering the affidavit because it was incompetent evidence under TEX.R.EVID. 606(b). The trial court did not expressly rule on the objection but pointed out to counsel that the affidavit did not state that any outside influence was

brought to bear upon the jurors. By failing to offer the Galvan affidavit into evidence at the new trial hearing, Appellant did not establish his entitlement to a new trial. *See Rouse*, 300 S.W.3d at 762; *Jackson*, 139 S.W.3d at 20.

Even if Appellant had offered the Galvan affidavit into evidence at the hearing, it would have been inadmissible under Rule 606(b). That rule provides that, upon an inquiry into the validity of a jury's verdict, a juror may not testify as to any matter or statement occurring during the jury's deliberations or to the effect of anything on any juror's mind or emotions or mental processes as influencing any juror's assent to or dissent from the jury's verdict. TEX.R.EVID. 606(b). A juror may, however, testify to "whether any outside influence was improperly brought to bear upon any juror[.]" TEX.R.EVID. 606(b); *see also White v. State*, 225 S.W.3d 571, 574-75 (Tex.Crim.App. 2007). An outside influence is an influence from a source other than the jurors. *White*, 225 S.W.3d at 574. Galvan's affidavit did not address whether outside influences were brought to bear upon any juror. Consequently, the affidavit is inadmissible and does not constitute competent evidence. The trial court did not abuse its discretion by failing to grant the motion for new trial.

*Inconsistent Verdicts*

Appellant also alleged in his motion for new trial that the jury's verdict that Appellant was guilty of sexual assault (Count I) is inconsistent with its determination that Appellant was not guilty of incest (Count II). We understand Appellant to argue that the evidence is insufficient to support his conviction because the jury acquitted him of Count II, or alternatively, the inconsistent verdicts show that there is jury misconduct. Inconsistent verdicts in prosecutions based on the same evidence do not require a reversal on the ground of legal insufficiency. *Dunn v. United States*, 284 U.S. 390, 393-94, 52 S.Ct. 189, 191, 76 L.Ed. 356 (1932); *Thomas v. State*,

352 S.W.3d 95, 101 (Tex.App.--Houston [14th Dist.] 2011, pet. ref'd); *Jackson v. State*, 3 S.W.3d 58, 61 (Tex.App.--Dallas 1999, no pet.). Inconsistent verdicts do not necessarily imply that the jury convicted the defendant on insufficient evidence, but may simply stem from the jury's desire to be lenient or to execute its own brand of executive clemency. *Thomas*, 352 S.W.3d at 101; *Jackson*, 3 S.W.3d at 61. Even where an inconsistent verdict might have been the result of compromise or mistake, the verdict should not be upset by appellate speculation or inquiry into such matters. *Jackson*, 3 S.W.3d at 61-62, *citing United States v. Powell*, 469 U.S. 57, 64-67, 105 S.Ct. 471, 83 L.Ed.2d 461 (1984). Consequently, we are limited to determining whether the evidence is sufficient to support the jury's guilty verdict, a matter we addressed in our review of Appellant's first issue. The trial court did not abuse its discretion by failing to grant Appellant's motion for new trial on the ground of inconsistent verdicts. Issue Three is overruled.

### EXTRANEOUS OFFENSE EVIDENCE

In Issue Four, Appellant asserts that the trial court erred by admitting extraneous offense evidence during the punishment phase because the witness "was hidden from Appellant until the time of trial." Appellant's ex-wife, Anna Margarita Garcia, testified without objection that Appellant beat, sexually assaulted, and threatened to kill her with a knife on June 9, 2006. Garcia testified that, on March 13, 2007, Appellant assaulted her and threatened to kill her while holding a knife to her throat. This assault resulted in Appellant's conviction of aggravated assault with a deadly weapon. Garcia also testified, without objection, that Appellant hit her every day of their thirteen years of marriage and often forced himself on her sexually.

To preserve a complaint for appellate review, a party must have presented to the trial court a timely request, objection, or motion that states the specific grounds for the desired ruling

if they are not apparent from the context of the request, objection, or motion. TEX.R.APP.P. 33.1(a)(1); *Lovill v. State*, 319 S.W.3d 687, 691-92 (Tex.Crim.App. 2009); *Moff v. State*, 131 S.W.3d 485, 489 (Tex.Crim.App. 2004). Appellant did not object to Garcia's testimony at trial on the ground that the extraneous offenses were inadmissible during the punishment phase. Consequently, the arguments raised on appeal are waived. *See Bernal v. State*, 74 S.W.3d 76, 78 (Tex.App.--Eastland 2002, pet. ref'd)(defendant did not preserve complaints related to admission of extraneous offenses during punishment phase because he failed to object). Issue Four is overruled.

## CUMULATIVE ERROR

In his final issue, Appellant argues that his conviction should be reversed due to cumulative error. We have rejected Appellant's claims of error raised in Issues One through Four. The Court of Criminal Appeals has recognized that a number of errors may be found harmful in their cumulative effect, but there is no authority holding that non-errors may in their cumulative effect cause error. *Chamberlain v. State*, 998 S.W.2d 230, 238 (Tex.Crim.App. 1999). We overrule Issue Five and affirm the judgment of the trial court.


September 19, 2012                     _____
                                      ANN CRAWFORD McCLURE, Chief Justice

Before McClure, C.J., Rivera, and Antcliff, JJ.

(Do Not Publish)

- 14 -