02-10-129-CR









 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 COURT OF APPEALS
 SECOND DISTRICT OF TEXAS
 FORT WORTH
  
 
 


 

NO. 02-10-00129-CR

 

 


 
 
 JaIme Munoz
 
 
  
 
 
 APPELLANT
 
 
 
 
  
 V.
  
 
 
 
 
 The State of Texas
 
 
  
 
 
 STATE
 
 


 

 

------------

 

FROM THE 362nd
District Court OF Denton COUNTY

------------

MEMORANDUM
OPINION[1]

----------

I. 
Introduction

          Appellant
Jaime Munoz pleaded guilty without a plea bargain to possessing 2,000 pounds or
less but more than 50 pounds of marihuana.  See Tex. Health & Safety
Code Ann. § 481.121(a), (b)(5) (Vernon 2010).  After a punishment hearing, at
which Appellant testified, the trial court sentenced Appellant to fifteen years
in prison.  Appellant filed a motion for new trial, asserting involuntary plea
and ineffective assistance of counsel.  The trial court denied the motion after
a hearing.  We affirm.

II. 
Factual and Procedural Background

          One
October afternoon in 2008, a Texas Department of Public Safety (DPS) trooper
pulled over a pickup truck for what appeared to be tinting that extended too
low on the windshield and for not displaying a current inspection sticker.  Lorenzo
Garcia was the driver and Appellant the passenger.  Both appeared nervous as
they told the trooper that they were on their way from South Texas to Oklahoma. 
A necklace dangling from the rearview mirror bore the image of Jesus Malverde, the
patron saint of drug smugglers.  The trooper obtained consent to search.

          Other
troopers arrived to assist with the search, and in the bed of the pickup near
the cab, one of them noticed two spare tires weighted down with tow bars.  He
thought this odd since spare tires normally do not need extra weight to hold
them down.  He noticed, too, fingerprints all over the spare tires, indicating
that they had been handled recently.  Finally, he observed a piece of plywood
resting in the middle of the truck’s bed with oil on it.  He knew that drug
smugglers often use oil-covered wood to discourage searches because they think troopers
“don’t want to get dirty.”

          After
lifting the tires, shaking them, and listening to them with a stethoscope, the
troopers let the air out and cut the tires open, exposing bundles of marihuana.
 They arrested Appellant and Garcia and took them to the Denton County jail.  The
bundles went to the DPS lab in Garland where it was determined that they
contained 52.15 pounds of marihuana.  Appellant’s bond was set at $100,000.

          Appellant’s
father knew a private investigator and legal assistant named Pedro “Pete”
Cavazos.  Cavazos recommended Corpus Christi attorney Alfred Montelongo (Counsel)
to represent Appellant.

          Counsel
contacted local attorneys in Denton, Stephen Wohr & Associates, to assist
with Appellant’s defense.  Wohr successfully petitioned the trial court to
reduce Appellant’s bond from $100,000 to $25,000 with Counsel co-signing.

          A
lawyer in Wohr’s office, Greg Boling, appeared in court for Appellant six times
between April and November of 2009.  The State’s standing plea-bargain offer
from April through August of 2009 was three years in prison.  Appellant,
however, wanted deferred adjudication.

          Counsel
appeared in court for Appellant in October 2009 and set the case for an open
plea.  Boling made the next court appearance in November, and the case was reset
to December for an open plea.

          At
the December setting, the trial court granted Appellant’s motion to substitute Stephen
Wohr & Associates with Counsel as Appellant’s attorney of record.

          In
January 2010, Appellant and Counsel appeared before the trial court.  After
establishing that Appellant was a United States citizen who could read, write,
and speak English, the trial court set out the range of punishment and asked
Appellant if his plea was intelligent, free, and voluntary.  Appellant answered
yes, Counsel tendered an application for probation, and Appellant pleaded
guilty to the indictment.

          During
the punishment hearing, the State offered evidence of the offense and Appellant
testified on his own behalf.  At the end of the punishment hearing, the trial
judge found that Appellant’s testimony was not credible and sentenced him to
fifteen years in prison.

          Appellant
filed a motion for new trial, which the trial court denied after a hearing.

III. 
Issues on Appeal

          Appellant
presents two issues in his challenge to the trial court’s denial of his motion
for new trial.  First, he contends that his plea was entered involuntarily and
unknowingly.  Second, he argues that his attorney was ineffective.

IV.
Standard of Review

          We
review a trial court’s ruling on a motion for new trial for an abuse of
discretion.  Webb v. State, 232 S.W.3d 109, 112 (Tex. Crim. App. 2007); Holden
v. State, 201 S.W.3d 761, 763 (Tex. Crim. App. 2006); Loftin v. State,
No. 02-08-00324-CR, 2010 WL 1730859, at *2 (Tex. App.––Fort Worth Apr. 29,
2010, pet. ref’d) (mem. op., not designated for publication).  We view the
evidence in the light most favorable to the trial court’s ruling and uphold it
if it was within the zone of reasonable disagreement.  Webb, 232 S.W.3d
at 112.  We do not substitute our judgment for that of the trial court, but
rather we decide whether the trial court’s decision was arbitrary or unreasonable. 
Webb, 232 S.W.3d at 112; Holden, 201 S.W.3d at 763.  At a hearing
to determine whether to grant a new trial, the trial court is the sole judge of
the witnesses’ credibility.  See Salazar v. State, 38 S.W.3d 141, 148
(Tex. Crim. App.), cert. denied, 534 U.S. 855 (2001).  When the trial
judge acts as a factfinder at a new trial hearing and evaluates the credibility
of the defendant’s testimony, the judge is not required to accept the testimony
as true, whether it is controverted or not.  Dusenberry v. State, 915
S.W.2d 947, 949 (Tex. App.––Houston [1st Dist.] 1996, pet. ref’d); Messer v.
State, 757 S.W.2d 820, 828 (Tex. App.––Houston [1st Dist.] 1988, pet.
ref’d); Ortiz v. State, No. 02-07-00022-CR,  2008 WL 281171, at *3 (Tex.
App.––Fort Worth Jan. 31, 2008, pet. ref’d) (mem. op., not designated for
publication).  A trial court abuses its discretion when it denies a motion for
new trial only when no reasonable view of the record could support the trial
court’s ruling.  Webb, 232 S.W.3d at 112; Holden, 201 S.W.3d at
763.

V. 
Voluntariness

A.  Prima
Facie Showing

          A
guilty plea must be knowingly and voluntarily made or it will be held
constitutionally invalid.  See Brady v. United States, 397 U.S. 742,
748, 90 S. Ct. 1463, 1469 (1970); Aguirre–Mata v. State, 125 S.W.3d 473,
474 (Tex. Crim. App. 2003) (noting that there must be a showing “spread on the
record” that a guilty plea is intelligent and voluntary).  When the record
reflects that a defendant was properly admonished, it presents a prima facie showing
that the guilty plea was entered knowingly and voluntarily.  Martinez v.
State, 981 S.W.2d 195, 197 (Tex. Crim. App. 1998); Jackson v. State,
139 S.W.3d 7, 14 (Tex. App.––Fort Worth 2004, pet. ref’d).  The burden then
shifts to the defendant to establish that, notwithstanding the statutory
admonishments, he did not understand the consequences of his plea.  Martinez,
981 S.W.2d at 197; Jackson, 139 S.W.3d at 14; Ribelin v. State, 1
S.W.3d 882, 884 (Tex. App.––Fort Worth 1999, pet. ref’d).

          The
record in this case shows that before accepting Appellant’s guilty plea, the
trial court ensured that Appellant understood that he was giving up
constitutional and statutory rights freely and voluntarily and that he knew the
range of punishment.  After establishing that Appellant was a United States
citizen who could read, write, and speak English, the trial court set out the
range of punishment and asked Appellant if his plea was intelligent, free, and
voluntary:

          THE COURT: 
Now, in this case you’ve been indicted on a second-degree felony.  The
punishment range for a second-degree felony is from two years in a state
penitentiary up to 20 years in the state penitentiary, with an optional fine of
up to $10,000.

 

          Do you
understand that punishment range?

 

           [APPELLANT]: 
Yes, your Honor.

 

          THE COURT: 
And your attorney -- -- well, I believe that you’re going forward at this time
with your plea, and there’s no plea agreement between you and the State.  Is
that correct?

 

          [APPELLANT]: 
Yes, your Honor.

 

          THE COURT: 
Are you pleading guilty today freely, knowingly, and voluntarily?

 

          [APPELLANT]: 
Yes, your Honor.

 

          Appellant
then acknowledged that he had reviewed and signed a number of documents with
his attorney.  Of the documents in the clerk’s record that bear Appellant’s and
Counsel’s signatures is the Court’s Admonition of Statutory and Constitutional
Rights and Defendant’s Acknowledgement.  It states, in pertinent part:

          The Court
hereby admonishes you of the following Statutory and Constitutional Rights
prior to your entry of a plea of guilty/nolo contendere in this case pursuant
to Article 26.13 of the Texas Code of Criminal Procedure and the Constitutions
of Texas and the United States of America:

 

          1.       You
are charged with a:

 

. . . .

 

  √      2nd degree felony offense and the
range of punishment is a term of imprisonment in the Institutional Division of
the Texas Department of Criminal Justice for any term of not more than 20 years
or less than 2 years and an optional fine not to exceed $10,000.

 

. . . . 

 

ACKNOWLEDGMENT

 

          I have read
the above and foregoing admonitions by the Court regarding my rights.  I
understand the admonitions, and I understand and am aware of the consequences
of my plea.  Furthermore, my attorney has explained to me all of the
admonitions given by the Court in this document.

 

          Signed this
the 15 day of January, 2010 [by Appellant and Counsel].

 

          In
addition, Appellant and Counsel signed another document that included, in
pertinent part, the following statement: “I have been advised as to the consequences
of a plea of guilty or nolo contendere including the minimum and maximum punishment
provided by law[.]”

          We
hold that the record reflects that Appellant was properly admonished. 
Accordingly, Appellant had the burden at the hearing on his motion for new
trial to establish that, notwithstanding the admonishments, he pleaded guilty
without understanding the consequences.  See Martinez, 981 S.W.2d at
197; Jackson, 139 S.W.3d at 14.

B. 
Appellant did not overcome the prima facie showing of voluntariness.

          Appellant
argues that his plea was involuntary because Counsel only talked to him for
thirty minutes, promised him he would get probation if he pleaded guilty, and did
not tell him that he could be sentenced for up to twenty years in prison.

          Appellant
did not testify at the hearing on his motion for new trial.  Instead, he relied
on his affidavit attached to his motion for new trial and on the testimony of a
lawyer who testified at the hearing on the motion for new trial.

          Although
the trial court took judicial notice of its file, including the motion for new
trial and Appellant’s affidavit, Appellant never offered the affidavit in
evidence and it was never admitted.  An affidavit attached to a motion is
merely “a pleading that authorizes the introduction of supporting evidence” and
is not evidence itself.  Stephenson v. State, 494 S.W.2d 900, 909–10
(Tex. Crim. App. 1973); see McIntire v. State, 698 S.W.2d 652, 658 (Tex.
Crim. App. 1985).  Appellant’s affidavit, therefore, was not before the trial court
on the issue of whether Appellant met his burden of proving that his plea was
involuntary despite his having been properly admonished.  See Jackson, 139
S.W.3d at 20–21 (holding that when an appellant raises ineffective assistance
of counsel claims by affidavit, although a court may judicially notice the affidavit’s
existence in its file, it may not take judicial notice of the truth of the facts
set out in the affidavit).  Accordingly, in addressing Appellant’s first issue
that the trial court abused its discretion by overruling the motion for new
trial on the basis that Appellant’s plea was involuntary and unknowing, we will
not consider the assertions made in Appellant’s affidavit that are unsupported
by evidence actually admitted at the hearing.

          We
will, however, consider the testimony of Kelly McKinnis, the attorney who testified
at the hearing on Appellant’s motion for new trial.  McKinnis testified that he
reviewed the clerk’s record, reviewed a case file retrieved from Counsel’s
office, and talked to Appellant, Appellant’s family, Appellant’s appellate
counsel, Cavazos, and Boling.  Based on his review and on these conversations, he
testified that Counsel spent a total of only thirty minutes with Appellant, told
Appellant that he would get probation but did not tell him that he could get
twenty years’ confinement.

          McKinnis
also testified that Appellant did not understand he could go to prison on the
day of sentencing, that Appellant’s “confusing” testimony at the punishment
hearing was evidence that he did not understand his exposure to prison time,
and that Counsel failed to document in the case file that he told Appellant
that he could be sentenced to twenty years.

          We
hold that given this testimony, the trial court reasonably could have concluded
that Appellant did not sustain his burden of proving that his plea was entered
unknowingly and involuntarily.  First, as pointed out in the State’s objection
at the hearing on the motion for new trial, McKinnis’s testimony that Counsel
told Appellant he would get probation is hearsay.  Although the judge sustained
the State’s objection, he stated that he would consider the statement only as
it relates to Appellant’s state of mind and not for the truth of the matter
asserted.  While we agree with the trial court that the statement, “you’re
getting probation” is not hearsay because it was not offered for its truth, the
statement, “His lawyer told him, ‘You’re getting . . . probation,’” was offered
for the truth of the matter asserted: that Counsel told Appellant he
would get probation.  The statement—Counsel told Appellant he would get
probation—spoken by an out-of-court declarant (someone McKinnis spoke with,
presumably Appellant) and offered for the truth of the matter asserted—is
inadmissible hearsay, which viewed in the light most favorable to the trial
court’s ruling, we presume the trial court disregarded.  See Tex. R.
Evid. 801, 802; Webb, 232 S.W.3d at 112.

          Second,
as for the claim that Appellant did not know he could be sentenced to prison,
we defer to the trial court’s assessment of Appellant’s credibility stated at
the end of the hearing on the motion for new trial:

Well, he already has
said that nobody told him about the punishment range, but in open court I told
him about the punishment range.  I then asked him, “Have you had an opportunity
to review the documents with your attorney?”  His answer was, “Yes, your Honor.” 
Now he’s telling me that he didn’t review them.  So he was either lying then or
he’s lying today.  Either way, he’s a liar.

 

See
Alexander v. State, 282 S.W.3d 701, 706 (Tex. App.––Houston
[14th Dist.] 2009, pet. ref’d) (reasoning that trial court is sole judge of
witness credibility and weight of testimony).

          Third,
we hold that it was reasonable for the trial court to place little, if any,
weight on McKinnis’s testimony that Appellant’s “confusing” testimony at the
punishment hearing was evidence that he did not understand the consequences of
his plea.  Deferring, as we must, to the trial court’s determinations of
credibility and demeanor that are supported by the record, we hold that the
record amply supports the trial court’s conclusion that Appellant’s confusing
testimony was confusing mainly because he “was confused in trying to figure out
the lies that he was saying.”

          Finally,
we hold that whether or not the case file reviewed by McKinnis documents that Counsel
told Appellant an open plea subjected him to the risk of the full punishment range,
it was reasonable for the trial court to conclude that Appellant understood
that he could be sentenced anywhere within the full range of punishment because
the record shows that Appellant was properly admonished and because the record
supports the trial judge’s determination of Appellant’s credibility.

          Viewing
the record in the light most favorable to the trial court’s ruling, and
deferring to the trial court’s determinations of credibility issues, we hold
that the trial court reasonably found that Appellant’s plea was entered
knowingly and voluntarily.  Accordingly, we overrule Appellant’s first issue.

VI. 
Effectiveness of Counsel

          To
establish ineffective assistance of counsel, Appellant must show by a
preponderance of the evidence that his counsel’s representation fell below the
standard of prevailing professional norms and that there is a reasonable
probability that, but for counsel’s deficiency, the result of the trial would
have been different.  Strickland v. Washington, 466 U.S. 668, 687, 104
S. Ct. 2052, 2064 (1984); Salinas v. State, 163 S.W.3d 734, 740 (Tex.
Crim. App. 2005); Mallett v. State, 65 S.W.3d 59, 62–63 (Tex. Crim. App.
2001); Thompson v. State, 9 S.W.3d 808, 812 (Tex. Crim. App.
1999); Hernandez v. State, 988 S.W.2d 770, 770 (Tex. Crim. App. 1999).  Allegations
of ineffectiveness must be based on the record, and the presumption of a sound
trial strategy cannot be overcome absent evidence in the record of the
attorney’s reasons for his conduct.  Ex parte Niswanger, No. AP-76302,
2011 WL 891285, at *3 (Tex. Crim. App. Mar. 16, 2011); Busby v. State,
990 S.W.2d 263, 269 (Tex. Crim. App. 1999), cert. denied, 528 U.S. 1081
(2000).

          An
appellant claiming ineffective assistance of counsel must identify his counsel’s
allegedly erroneous acts and omissions.  Strickland, 466 U.S. at 690,
104 S. Ct. at 2066.  We then determine whether, in light of all the
circumstances, these identified acts or omissions were outside the wide range
of competent assistance.  Id.

          In
addition to the allegations discussed above that we have already held are
without merit, Appellant claims numerous alleged acts and omissions of Counsel
rendered his representation constitutionally deficient.  We will address these
in turn.  But first we turn to the presumption of reasonable effective
representation.

          There
is a strong presumption that trial counsel’s conduct falls within a wide range
of reasonable representation.  Salinas, 163 S.W.3d at 740; Mallett,
65 S.W.3d at 63.  Ordinarily, a lawyer should be given an opportunity to
explain his actions before being denounced as ineffective.  Rylander v.
State, 101 S.W.3d 107, 111 (Tex. Crim. App. 2003); see also Goodspeed v.
State, 187 S.W.3d 390, 391 (Tex. Crim. App. 2005) (holding that inquiry
into trial counsel’s conduct—failure to ask any questions during voir dire and
exercise of peremptory challenges on jurors who had already been excused—was
needed to determine whether performance was deficient).  Absent evidence in the
record of the attorney’s reasons for his conduct, an appellant claiming that
his lawyer was ineffective cannot overcome the presumption of a sound trial
strategy.  Niswanger, 2011 WL 891285, at *3; Busby, 990 S.W.2d at
269.

          Neither
Counsel nor the attorney who handled most of Appellant’s court appearances for
Counsel, Greg Boling, testified at the hearing on the motion for new trial, nor
did either of them submit affidavits explaining the decisions related to
Appellant’s representation.  As the State points out in its brief, Appellant
thus failed to present testimony from the “two attorneys who would have best
been able to testify to what occurred in Appellant’s case[.]”  And although Appellant
attached affidavits to his motion, including his own and those of two witnesses
who did testify at the hearing, as previously discussed, he did not offer these
affidavits in evidence nor were they admitted.  Consequently, the evidence in
the record upon which Appellant may draw support for his allegations of
ineffectiveness is left to the testimony of Cavazos, who was Counsel’s former
employee and a friend of Appellant’s family; the testimony of McKinnis, the
lawyer who opined on the quality of Counsel’s representation; and Appellant’s
cross-examination of local counsel Stephen Wohr.

          None
of these witnesses testified to having any first-hand knowledge of Counsel’s
decision-making process or of the reasons behind any of the decisions he made
in providing Appellant’s representation.  Cavazos admitted that he never worked
in Denton and that he did not work for Counsel on this case, although he
testified that he did do some work on the side for the family.  McKinnis based
his critique on having reviewed the file and having talked to Appellant,
Appellant’s family, and Cavazos but not to Counsel or to Boling.  And finally,
Wohr did not appear to have any significant direct involvement in representing
Appellant, delegating that task to Boling.

          Moreover,
even absent Counsel’s first-hand account, our reading of the record reveals a
reasonable strategy.  The record shows that at no less than five court
appearances, the State communicated its plea-bargain offer of three years’
confinement to Appellant and to Boling.  Appellant’s signature appears beneath
the State’s prominently hand-written offer on numerous pass slips preserved in
the clerk’s record.   According to testimony in the record, however, Appellant
wanted deferred adjudication probation.

          To
get deferred, Appellant had to enter an open plea.  Wohr testified that, if a
defendant’s only acceptable outcome is deferred adjudication and the State does
not offer it, there is no option other than entering an open plea to the trial
court.  Thus, the trial court summed up Counsel’s strategy as “[Appellant] does
not want to go to the penitentiary; therefore, we’ll ask the Court for deferred
adjudication.  We’ll ask for mercy from the Court.  The way we’ll do that is
we’ll plead guilty, accept responsibility.”

          The
record augments the already strong presumption that trial counsel employed
reasonable strategy and thus provided reasonable professional representation.  To
determine whether Appellant has rebutted that presumption, we now turn to his
additional complaints about his counsel’s representation.

Counsel
did not challenge the stop or the search as pretextual.

          Appellant
faults Counsel for not challenging the stop or the search as a pretext because
there was evidence that the window tint was within legal limits.  He ignores,
however, the trooper’s second stated basis for the stop as set out in the
complaint:  “The vehicle also was also [sic] not inspected.”  Because Appellant
offers no theory for challenging the stop on the basis of the truck not having
a valid inspection sticker, we presume that Counsel determined there was none.

          Once
the trooper made a valid stop on the basis of the truck’s lack of a current
inspection sticker, Appellant’s and Garcia’s nervousness, the image of the
patron saint of drug smugglers, and most importantly their consent to search
vitiate any claim that the search was pretextual.  Counsel is not ineffective
for failing to file a futile claim.  See Ex parte Chandler, 182 S.W.3d
350, 356 (Tex. Crim. App. 2005); Jackson v. State, 973 S.W.2d 954, 957
(Tex. Crim. App. 1998) (to show ineffective assistance of counsel based on a
failure to move to suppress evidence, an appellant must show that motion would
have been granted).

          Moreover,
we’ve already held that the record shows that Appellant wanted deferred
adjudication and that Counsel’s strategy was to seek it for him.  And as the
trial court observed, “if you’re going to ask for mercy from the Court by
accepting responsibility for your actions, admitting guilt and asking for
deferred, you’re not going to file a bunch of pretrial motions to contest
everything, because that’s really not accepting responsibility and would hurt
your chances of getting deferred adjudication.”

          We
hold that Appellant’s complaint about the stop does not support his claim that Counsel
was ineffective.  See Chandler, 182 S.W.3d at 356; Jackson, 973
S.W.2d at 957.

Counsel
did not move to re-weigh the marihuana without seeds and stems.

          Appellant
contends that Counsel should have moved to reweigh the seized marihuana without
seeds, stems, and packaging because a reweighing might have reduced the offense
to a third-degree felony and thus have reduced his punishment exposure.  There
is no evidence in the record, however, that seeds, stems, and packaging were
included when the DPS lab weighed the marihuana.  To the contrary, our review
of the record suggests that the marihuana might already have been cleaned before
it was weighed in the lab.  The DPS complaint stated that the weight of the
seized drugs was “approximately 63 pounds.”  The subsequent lab report,
however, listed a net weight of “52.15 pounds.”  Further, Appellant presented no
evidence that reweighing actually would have resulted in a weight of less than
fifty pounds.[2]  See Guijon v. State,
No. 14-06-01001-CR, 2007 WL 4165388, at *5 (Tex. App.––Houston [14th Dist] Nov.
20, 2007, no pet.) (mem. op., not designated for publication) (holding counsel
not ineffective when he did not advise defendant of the option or file a motion
to reweigh 5.1 pounds of marihuana without seeds or stalks when a weight under
5 pounds would have reduced the charge).  Without evidence that a reweigh
actually would have reduced the severity of the offense with which Appellant
was charged, we refuse to hold Counsel ineffective for failing to request one.

Counsel did not request notice of the State’s
intent to offer extraneous acts evidence.

 

          At
the punishment hearing, the trial court admitted photos from Appellant’s cell
phone.  One of these is dated September 1 and depicts marihuana buds.  Two
pictures dated October 2 show a large quantity of United States currency.  Appellant
appears in one of these, smiling broadly, standing over a pile of money.

          Appellant
declares it a “huge error” for Counsel not to have made a request under rule 404(b)
for timely notice of the State’s intent to offer extraneous offense evidence
because if he had, Counsel could have prepared for the State offering the photo
from Appellant’s cell phone showing marihuana buds which was dated a month
before Appellant’s arrest.  The record shows, however, that a request for such
notice was unnecessary because the State maintained an open file policy, the
State provided Counsel with all the evidence introduced at trial, Appellant
admitted at the punishment hearing that Counsel had shown him the photos on his
cell phone before trial, and McKinnis testified at the hearing on the motion
for new trial that all the photos had been submitted to the defense.  This
complaint, therefore, is without merit.

Counsel did not seek to use testimony from
the codefendant who supposedly accepted full responsibility.

 

          Appellant
faults counsel for not calling Lorenzo Garcia to testify on his behalf because,
according to Cavazos, Garcia said he was willing to take full responsibility
for the offense.  Notwithstanding the fact that one’s willingness to accept
full responsibility for an offense logically does not foreclose another’s
culpability, the record shows that Garcia was a fugitive.  Given this fact, the
trial court reasonably could have discredited Cavazos’ testimony that Garcia
was willing to take any responsibility for the offense.  Moreover, the evidence
admitted at the punishment hearing was sufficient to show Appellant’s
culpability.  Finally, calling a codefendant to assume responsibility for an offense,
while at the same time seeking a probated sentence by accepting responsibility
for that offense, is strategically inconsistent.  And as discussed previously,
it is apparent from the record that Counsel’s strategy was to obtain for
Appellant deferred adjudication, which is the outcome the evidence shows
Appellant wanted.

Counsel did not try to suppress or mitigate
the effects of incriminating photos found in Appellant’s cell phone.

 

          Again,
as stated by the trial court, “if you’re going to ask for mercy from the Court
by accepting responsibility for your actions, admitting guilt and asking for
deferred, you’re not going to file a bunch of pretrial motions to contest
everything, because that’s really not accepting responsibility and would hurt
your chances of getting deferred adjudication.”  Not challenging the photos
found in Appellant’s cell phone, which was apparently seized incident to a
lawful arrest, and for which Appellant concedes a warrant was obtained, is,
again, consistent with Counsel’s apparent-from-the-record trial strategy of
securing deferred adjudication for Appellant by having him assume
responsibility and throw himself on the mercy of the court.  Because Counsel
reasonably could have decided not to seek suppression of the photos in
effecting his apparent strategy, Appellant’s complaint is groundless.

Counsel
did not tell Appellant that the sentencing judge had been a prosecutor.

          The
record is devoid of any evidence that the trial judge, regardless of his
background as a prosecutor, was biased or predisposed to assessing a harsh
sentence.  This complaint, therefore, is not grounded in the record.

Counsel
should not have allowed Appellant to testify.

          Responding
to the argument that Counsel should not have allowed Appellant to testify, the
trial court noted, “I don’t know many cases in which they’re accepting
responsibility and asking for deferred and really expect it to be granted in
which the defendant doesn’t get up and testify.”  The record shows that
Appellant’s taking the stand was integral to Counsel’s apparent strategy.  The
problem for Appellant is that the trial court did not believe him.  Absent
evidence that Counsel knew Appellant would lie, we will not fault Counsel for
allowing him to testify.

Counsel
took no action to refute “the suggestion” that Appellant lied on the stand.

          As
the following excerpts illustrate, the record shows more than a suggestion that
Appellant lied.

          [APPELLANT]: 
I didn’t know there was nothing in the tires.

 

          . . . .  

 

          [APPELLANT]: 
No.  I knew there was something in them, but I didn’t know where it was.  He
told me it was going to be a surprise.  Because I told him I didn’t want to
know nothing about it, you know.

 

          Q.  Okay. 
So you didn’t want to know the details, but you knew you were involved in a
drug train.

 

          A.  Yes,
ma’am.

 

          Q.  You
knew that’s what he was doing and that’s what he was talking about when he said
he was going to triple your money.

 

          A.  Yes,
ma’am.

 

          Q.  And you
agreed to that.

 

          A.  Yes,
ma’am.  Like I said, it was a mistake.

 

          Q.  All
right.  When is the first time you were involved in any kind of drug trade or
large quantities of drugs?

 

          A.  I never
done it.

 

          Q.  You’d
never done it before—

 

          A.  No,
ma’am.

 

          Q.  —October
the 16th?

 

          A.  Well,
that’s the only time.

 

          Q.  That’s
the only time?

 

          A.  Yeah.

 

          Q.  When is
the first time you saw those drugs that were in the tires?

 

          A.  I
didn’t ever see them before.

 

          Appellant
testified that he did not know anything about the drugs in his truck; then he
testified that he made a mistake.  The photo of marihuana buds taken with
Appellant’s cell phone a month before the arrest is inconsistent with his
testimony that he did not know anything about the drugs and that he had never
seen them before.  Moreover, as pointed out by the State, the trial court’s
conclusion that Appellant lied on the stand came after the parties had rested
and the evidence was concluded.  It was reasonable, therefore, for Counsel not
to risk alienating the trial judge by attempting to refute the trial court’s
conclusion, which was, after all, supported by Appellant’s testimony.

Counsel did not object to the State’s alleged
improper impeachment of Appellant by asking whether he had ever been arrested
before.

 

          Appellant
does not provide any argument to support his claim that Counsel should have
objected to the State’s “improper impeachment” of Appellant when the State
asked if he had ever been arrested before.  See Vaughn v. State, 931
S.W.2d 564, 566 (Tex. Crim. App. 1996) (an appellant must show that it would
have been error for the trial court to overrule an objection to the admissibility
of evidence).  Nor does he point to any evidence in the record that Counsel’s
failure to object fell below professional norms.  Moreover, the record is
silent as to why Counsel did not object to this testimony.  We will not declare
a lawyer ineffective when his or her actions or omissions may have been based
upon tactical decisions, but the record lacks specific explanations for
counsel’s actions.  See Bone v. State, 77 S.W.3d 828, 830 (Tex. Crim.
App. 2002).  Accordingly, we hold that this complaint does not support
Appellant’s claim.

Counsel
was unprepared for the State’s cross-examination of Appellant.

          There
is no evidence in the record that Counsel did not prepare for the State’s
cross-examination.  Counsel was not called to testify, nor was anyone who
worked with Counsel on the case called to testify about his preparation for
cross-examination.  Moreover, it is apparent from the record that Appellant
lied on the stand.  As Wohr agreed at the motion for new trial hearing, once a
client takes the stand, an attorney has no control of whether he tells the
truth or whether he lies.  If Counsel was unprepared for the State’s
cross-examination of his dissembling client, the blame does not lie with
Counsel.  We will presume, absent evidence to the contrary, that Counsel did
not know that his client would lie under oath, and we decline the invitation to
hold a lawyer ineffective for not countering the State’s exposure of his
client’s mendacity.

Counsel
did not request a presentence investigation report (PSI).

          Finally,
Appellant’s complaint that Counsel did not request a PSI is without merit.  It
is apparent that the trial court was familiar with Appellant’s relatively clean
criminal history, and there is no evidence in the record that Appellant was
harmed by the failure of Counsel to request a PSI.  To paraphrase the trial
court, what harmed Appellant was lying on the stand, not the lack of a PSI.

          In
sum, we hold that the evidence in the record supports the trial court’s
rejection of Appellant’s claim that he was entitled to a new trial on the basis
of ineffective assistance of counsel.  Accordingly, we overrule Appellant’s
second issue.

VII. 
Conclusion

          Having
overruled both of Appellant’s issues, we affirm the judgment of the trial
court.

 

LEE GABRIEL

JUSTICE

 

PANEL: 
GARDNER,
MEIER, and GABRIEL, JJ.

 

DO
NOT PUBLISH

Tex.
R. App. P. 47.2(b)

 

DELIVERED:  May 12, 2011









[1]See Tex. R. App. P. 47.4.





[2]There is some speculation
in the record, however.  Self-reported “1977 University Interscholastic League
Number Sense state champion” McKinnis testified that “[i]t’s not uncommon to
see up to a 5 percent decrease in the reduction of the usable amount of marihuana
in a reweigh . . . .  And 52 pounds, 5 percent of that is about 2.6 pounds,
would have knocked it down to under 50 pounds, like 49.4 pounds[.]”  Despite
this display of mathematical acuity, Appellant has not shown that a reweigh
actually would have reduced the charge.