## COURT OF APPEALS
### SECOND DISTRICT OF TEXAS
### FORT WORTH
#### NO. 02-10-00129-CR


JAIME MUNOZ                                                             APPELLANT

V.

THE STATE OF TEXAS                                                          STATE

------------

FROM THE 362ND DISTRICT COURT OF DENTON COUNTY

------------

## MEMORANDUM OPINION[1]

----------

### I. Introduction

Appellant Jaime Munoz pleaded guilty without a plea bargain to possessing 2,000 pounds or less but more than 50 pounds of marihuana. *See* Tex. Health & Safety Code Ann. § 481.121(a), (b)(5) (Vernon 2010). After a punishment hearing, at which Appellant testified, the trial court sentenced Appellant to fifteen years in prison. Appellant filed a motion for new trial,

---

[1]*See* Tex. R. App. P. 47.4.

asserting involuntary plea and ineffective assistance of counsel. The trial court denied the motion after a hearing. We affirm.

## II. Factual and Procedural Background

One October afternoon in 2008, a Texas Department of Public Safety (DPS) trooper pulled over a pickup truck for what appeared to be tinting that extended too low on the windshield and for not displaying a current inspection sticker. Lorenzo Garcia was the driver and Appellant the passenger. Both appeared nervous as they told the trooper that they were on their way from South Texas to Oklahoma. A necklace dangling from the rearview mirror bore the image of Jesus Malverde, the patron saint of drug smugglers. The trooper obtained consent to search.

Other troopers arrived to assist with the search, and in the bed of the pickup near the cab, one of them noticed two spare tires weighted down with tow bars. He thought this odd since spare tires normally do not need extra weight to hold them down. He noticed, too, fingerprints all over the spare tires, indicating that they had been handled recently. Finally, he observed a piece of plywood resting in the middle of the truck's bed with oil on it. He knew that drug smugglers often use oil-covered wood to discourage searches because they think troopers "don't want to get dirty."

After lifting the tires, shaking them, and listening to them with a stethoscope, the troopers let the air out and cut the tires open, exposing bundles of marihuana. They arrested Appellant and Garcia and took them to the Denton

2

County jail. The bundles went to the DPS lab in Garland where it was determined that they contained 52.15 pounds of marihuana. Appellant's bond was set at $100,000.

Appellant's father knew a private investigator and legal assistant named Pedro "Pete" Cavazos. Cavazos recommended Corpus Christi attorney Alfred Montelongo (Counsel) to represent Appellant.

Counsel contacted local attorneys in Denton, Stephen Wohr & Associates, to assist with Appellant's defense. Wohr successfully petitioned the trial court to reduce Appellant's bond from $100,000 to $25,000 with Counsel co-signing.

A lawyer in Wohr's office, Greg Boling, appeared in court for Appellant six times between April and November of 2009. The State's standing plea-bargain offer from April through August of 2009 was three years in prison. Appellant, however, wanted deferred adjudication.

Counsel appeared in court for Appellant in October 2009 and set the case for an open plea. Boling made the next court appearance in November, and the case was reset to December for an open plea.

At the December setting, the trial court granted Appellant's motion to substitute Stephen Wohr & Associates with Counsel as Appellant's attorney of record.

In January 2010, Appellant and Counsel appeared before the trial court. After establishing that Appellant was a United States citizen who could read, write, and speak English, the trial court set out the range of punishment and

3

asked Appellant if his plea was intelligent, free, and voluntary. Appellant answered yes, Counsel tendered an application for probation, and Appellant pleaded guilty to the indictment.

During the punishment hearing, the State offered evidence of the offense and Appellant testified on his own behalf. At the end of the punishment hearing, the trial judge found that Appellant's testimony was not credible and sentenced him to fifteen years in prison.

Appellant filed a motion for new trial, which the trial court denied after a hearing.

### III. Issues on Appeal

Appellant presents two issues in his challenge to the trial court's denial of his motion for new trial. First, he contends that his plea was entered involuntarily and unknowingly. Second, he argues that his attorney was ineffective.

### IV. Standard of Review

We review a trial court's ruling on a motion for new trial for an abuse of discretion. *Webb v. State*, 232 S.W.3d 109, 112 (Tex. Crim. App. 2007); *Holden v. State*, 201 S.W.3d 761, 763 (Tex. Crim. App. 2006); *Loftin v. State*, No. 02-08-00324-CR, 2010 WL 1730859, at *2 (Tex. App.—Fort Worth Apr. 29, 2010, pet. ref'd) (mem. op., not designated for publication). We view the evidence in the light most favorable to the trial court's ruling and uphold it if it was within the zone of reasonable disagreement. *Webb*, 232 S.W.3d at 112. We do not substitute our judgment for that of the trial court, but rather we decide whether the trial

4

court's decision was arbitrary or unreasonable. *Webb*, 232 S.W.3d at 112; *Holden*, 201 S.W.3d at 763. At a hearing to determine whether to grant a new trial, the trial court is the sole judge of the witnesses' credibility. *See Salazar v. State*, 38 S.W.3d 141, 148 (Tex. Crim. App.), *cert. denied*, 534 U.S. 855 (2001). When the trial judge acts as a factfinder at a new trial hearing and evaluates the credibility of the defendant's testimony, the judge is not required to accept the testimony as true, whether it is controverted or not. *Dusenberry v. State*, 915 S.W.2d 947, 949 (Tex. App.—Houston [1st Dist.] 1996, pet. ref'd); *Messer v. State*, 757 S.W.2d 820, 828 (Tex. App.—Houston [1st Dist.] 1988, pet. ref'd); *Ortiz v. State*, No. 02-07-00022-CR, 2008 WL 281171, at *3 (Tex. App.—Fort Worth Jan. 31, 2008, pet. ref'd) (mem. op., not designated for publication). A trial court abuses its discretion when it denies a motion for new trial only when no reasonable view of the record could support the trial court's ruling. *Webb*, 232 S.W.3d at 112; *Holden*, 201 S.W.3d at 763.

## V. Voluntariness

### A. Prima Facie Showing

A guilty plea must be knowingly and voluntarily made or it will be held constitutionally invalid. *See Brady v. United States*, 397 U.S. 742, 748, 90 S. Ct. 1463, 1469 (1970); *Aguirre–Mata v. State*, 125 S.W.3d 473, 474 (Tex. Crim. App. 2003) (noting that there must be a showing "spread on the record" that a guilty plea is intelligent and voluntary). When the record reflects that a defendant was properly admonished, it presents a prima facie showing that the guilty plea was

5

entered knowingly and voluntarily. *Martinez v. State*, 981 S.W.2d 195, 197 (Tex. Crim. App. 1998); *Jackson v. State*, 139 S.W.3d 7, 14 (Tex. App.—Fort Worth 2004, pet. ref'd). The burden then shifts to the defendant to establish that, notwithstanding the statutory admonishments, he did not understand the consequences of his plea. *Martinez*, 981 S.W.2d at 197; *Jackson*, 139 S.W.3d at 14; *Ribelin v. State*, 1 S.W.3d 882, 884 (Tex. App.—Fort Worth 1999, pet. ref'd).

The record in this case shows that before accepting Appellant's guilty plea, the trial court ensured that Appellant understood that he was giving up constitutional and statutory rights freely and voluntarily and that he knew the range of punishment. After establishing that Appellant was a United States citizen who could read, write, and speak English, the trial court set out the range of punishment and asked Appellant if his plea was intelligent, free, and voluntary:

> THE COURT: Now, in this case you've been indicted on a second-degree felony. The punishment range for a second-degree felony is from two years in a state penitentiary up to 20 years in the state penitentiary, with an optional fine of up to $10,000.
>
> Do you understand that punishment range?
>
> [APPELLANT]: Yes, your Honor.
>
> THE COURT: And your attorney -- -- well, I believe that you're going forward at this time with your plea, and there's no plea agreement between you and the State. Is that correct?
>
> [APPELLANT]: Yes, your Honor.
>
> THE COURT: Are you pleading guilty today freely, knowingly, and voluntarily?
>
> [APPELLANT]: Yes, your Honor.

6

Appellant then acknowledged that he had reviewed and signed a number of documents with his attorney. Of the documents in the clerk's record that bear Appellant's and Counsel's signatures is the Court's Admonition of Statutory and Constitutional Rights and Defendant's Acknowledgement. It states, in pertinent part:

The Court hereby admonishes you of the following Statutory and Constitutional Rights prior to your entry of a plea of guilty/nolo contendere in this case pursuant to Article 26.13 of the Texas Code of Criminal Procedure and the Constitutions of Texas and the United States of America:

1. You are charged with a:

. . . .

√ **2nd degree felony** offense and the range of punishment is a term of imprisonment in the Institutional Division of the Texas Department of Criminal Justice for any term of not more than 20 years or less than 2 years and an optional fine not to exceed $10,000.

. . . .

ACKNOWLEDGMENT

I have read the above and foregoing admonitions by the Court regarding my rights. I understand the admonitions, and I understand and am aware of the consequences of my plea. Furthermore, my attorney has explained to me all of the admonitions given by the Court in this document.

Signed this the 15 day of January, 2010 [by Appellant and Counsel].

In addition, Appellant and Counsel signed another document that included, in pertinent part, the following statement: "I have been advised as to the

7

consequences of a plea of guilty or nolo contendere including the minimum and maximum punishment provided by law[.]"

We hold that the record reflects that Appellant was properly admonished. Accordingly, Appellant had the burden at the hearing on his motion for new trial to establish that, notwithstanding the admonishments, he pleaded guilty without understanding the consequences. *See Martinez*, 981 S.W.2d at 197; *Jackson*, 139 S.W.3d at 14.

## B.  Appellant did not overcome the prima facie showing of voluntariness.

Appellant argues that his plea was involuntary because Counsel only talked to him for thirty minutes, promised him he would get probation if he pleaded guilty, and did not tell him that he could be sentenced for up to twenty years in prison.

Appellant did not testify at the hearing on his motion for new trial. Instead, he relied on his affidavit attached to his motion for new trial and on the testimony of a lawyer who testified at the hearing on the motion for new trial.

Although the trial court took judicial notice of its file, including the motion for new trial and Appellant's affidavit, Appellant never offered the affidavit in evidence and it was never admitted. An affidavit attached to a motion is merely "a pleading that authorizes the introduction of supporting evidence" and is not evidence itself. *Stephenson v. State*, 494 S.W.2d 900, 909–10 (Tex. Crim. App. 1973); *see McIntire v. State*, 698 S.W.2d 652, 658 (Tex. Crim. App. 1985). Appellant's affidavit, therefore, was not before the trial court on the issue of

8

whether Appellant met his burden of proving that his plea was involuntary despite his having been properly admonished. *See Jackson*, 139 S.W.3d at 20–21 (holding that when an appellant raises ineffective assistance of counsel claims by affidavit, although a court may judicially notice the affidavit's existence in its file, it may not take judicial notice of the truth of the facts set out in the affidavit). Accordingly, in addressing Appellant's first issue that the trial court abused its discretion by overruling the motion for new trial on the basis that Appellant's plea was involuntary and unknowing, we will not consider the assertions made in Appellant's affidavit that are unsupported by evidence actually admitted at the hearing.

We will, however, consider the testimony of Kelly McKinnis, the attorney who testified at the hearing on Appellant's motion for new trial. McKinnis testified that he reviewed the clerk's record, reviewed a case file retrieved from Counsel's office, and talked to Appellant, Appellant's family, Appellant's appellate counsel, Cavazos, and Boling. Based on his review and on these conversations, he testified that Counsel spent a total of only thirty minutes with Appellant, told Appellant that he would get probation but did not tell him that he could get twenty years' confinement.

McKinnis also testified that Appellant did not understand he could go to prison on the day of sentencing, that Appellant's "confusing" testimony at the punishment hearing was evidence that he did not understand his exposure to

9

prison time, and that Counsel failed to document in the case file that he told Appellant that he could be sentenced to twenty years.

We hold that given this testimony, the trial court reasonably could have concluded that Appellant did not sustain his burden of proving that his plea was entered unknowingly and involuntarily. First, as pointed out in the State's objection at the hearing on the motion for new trial, McKinnis's testimony that Counsel told Appellant he would get probation is hearsay. Although the judge sustained the State's objection, he stated that he would consider the statement only as it relates to Appellant's state of mind and not for the truth of the matter asserted. While we agree with the trial court that the statement, "you're getting probation" is not hearsay because it was not offered for its truth, the statement, "His lawyer told him, 'You're getting . . . probation,'" was offered for the truth of the matter asserted: that *Counsel told Appellant* he would get probation. The statement—Counsel told Appellant he would get probation—spoken by an out-of-court declarant (someone McKinnis spoke with, presumably Appellant) and offered for the truth of the matter asserted—is inadmissible hearsay, which viewed in the light most favorable to the trial court's ruling, we presume the trial court disregarded. *See* Tex. R. Evid. 801, 802; *Webb*, 232 S.W.3d at 112.

Second, as for the claim that Appellant did not know he could be sentenced to prison, we defer to the trial court's assessment of Appellant's credibility stated at the end of the hearing on the motion for new trial:

10

> Well, he already has said that nobody told him about the punishment range, but in open court I told him about the punishment range. I then asked him, "Have you had an opportunity to review the documents with your attorney?" His answer was, "Yes, your Honor." Now he's telling me that he didn't review them. So he was either lying then or he's lying today. Either way, he's a liar.

*See Alexander v. State*, 282 S.W.3d 701, 706 (Tex. App.—Houston [14th Dist.] 2009, pet. ref'd) (reasoning that trial court is sole judge of witness credibility and weight of testimony).

Third, we hold that it was reasonable for the trial court to place little, if any, weight on McKinnis's testimony that Appellant's "confusing" testimony at the punishment hearing was evidence that he did not understand the consequences of his plea. Deferring, as we must, to the trial court's determinations of credibility and demeanor that are supported by the record, we hold that the record amply supports the trial court's conclusion that Appellant's confusing testimony was confusing mainly because he "was confused in trying to figure out the lies that he was saying."

Finally, we hold that whether or not the case file reviewed by McKinnis documents that Counsel told Appellant an open plea subjected him to the risk of the full punishment range, it was reasonable for the trial court to conclude that Appellant understood that he could be sentenced anywhere within the full range of punishment because the record shows that Appellant was properly admonished and because the record supports the trial judge's determination of Appellant's credibility.

11

Viewing the record in the light most favorable to the trial court's ruling, and deferring to the trial court's determinations of credibility issues, we hold that the trial court reasonably found that Appellant's plea was entered knowingly and voluntarily. Accordingly, we overrule Appellant's first issue.

## VI. Effectiveness of Counsel

To establish ineffective assistance of counsel, Appellant must show by a preponderance of the evidence that his counsel's representation fell below the standard of prevailing professional norms and that there is a reasonable probability that, but for counsel's deficiency, the result of the trial would have been different. *Strickland v. Washington*, 466 U.S. 668, 687, 104 S. Ct. 2052, 2064 (1984); *Salinas v. State*, 163 S.W.3d 734, 740 (Tex. Crim. App. 2005); *Mallett v. State*, 65 S.W.3d 59, 62–63 (Tex. Crim. App. 2001); *Thompson v. State*, 9 S.W.3d 808, 812 (Tex. Crim. App. 1999); *Hernandez v. State*, 988 S.W.2d 770, 770 (Tex. Crim. App. 1999). Allegations of ineffectiveness must be based on the record, and the presumption of a sound trial strategy cannot be overcome absent evidence in the record of the attorney's reasons for his conduct. *Ex parte Niswanger*, No. AP-76302, 2011 WL 891285, at *3 (Tex. Crim. App. Mar. 16, 2011); *Busby v. State*, 990 S.W.2d 263, 269 (Tex. Crim. App. 1999), *cert. denied*, 528 U.S. 1081 (2000).

An appellant claiming ineffective assistance of counsel must identify his counsel's allegedly erroneous acts and omissions. *Strickland*, 466 U.S. at 690, 104 S. Ct. at 2066. We then determine whether, in light of all the circumstances,

these identified acts or omissions were outside the wide range of competent assistance. *Id.*

In addition to the allegations discussed above that we have already held are without merit, Appellant claims numerous alleged acts and omissions of Counsel rendered his representation constitutionally deficient. We will address these in turn. But first we turn to the presumption of reasonable effective representation.

There is a strong presumption that trial counsel's conduct falls within a wide range of reasonable representation. *Salinas*, 163 S.W.3d at 740; *Mallett*, 65 S.W.3d at 63. Ordinarily, a lawyer should be given an opportunity to explain his actions before being denounced as ineffective. *Rylander v. State*, 101 S.W.3d 107, 111 (Tex. Crim. App. 2003); *see also Goodspeed v. State*, 187 S.W.3d 390, 391 (Tex. Crim. App. 2005) (holding that inquiry into trial counsel's conduct—failure to ask any questions during voir dire and exercise of peremptory challenges on jurors who had already been excused—was needed to determine whether performance was deficient). Absent evidence in the record of the attorney's reasons for his conduct, an appellant claiming that his lawyer was ineffective cannot overcome the presumption of a sound trial strategy. *Niswanger*, 2011 WL 891285, at *3; *Busby*, 990 S.W.2d at 269.

Neither Counsel nor the attorney who handled most of Appellant's court appearances for Counsel, Greg Boling, testified at the hearing on the motion for new trial, nor did either of them submit affidavits explaining the decisions related

to Appellant's representation. As the State points out in its brief, Appellant thus failed to present testimony from the "two attorneys who would have best been able to testify to what occurred in Appellant's case[.]" And although Appellant attached affidavits to his motion, including his own and those of two witnesses who did testify at the hearing, as previously discussed, he did not offer these affidavits in evidence nor were they admitted. Consequently, the evidence in the record upon which Appellant may draw support for his allegations of ineffectiveness is left to the testimony of Cavazos, who was Counsel's former employee and a friend of Appellant's family; the testimony of McKinnis, the lawyer who opined on the quality of Counsel's representation; and Appellant's cross-examination of local counsel Stephen Wohr.

None of these witnesses testified to having any first-hand knowledge of Counsel's decision-making process or of the reasons behind any of the decisions he made in providing Appellant's representation. Cavazos admitted that he never worked in Denton and that he did not work for Counsel on this case, although he testified that he did do some work on the side for the family. McKinnis based his critique on having reviewed the file and having talked to Appellant, Appellant's family, and Cavazos but not to Counsel or to Boling. And finally, Wohr did not appear to have any significant direct involvement in representing Appellant, delegating that task to Boling.

Moreover, even absent Counsel's first-hand account, our reading of the record reveals a reasonable strategy. The record shows that at no less than five

14

court appearances, the State communicated its plea-bargain offer of three years' confinement to Appellant and to Boling. Appellant's signature appears beneath the State's prominently hand-written offer on numerous pass slips preserved in the clerk's record. According to testimony in the record, however, Appellant wanted deferred adjudication probation.

To get deferred, Appellant had to enter an open plea. Wohr testified that, if a defendant's only acceptable outcome is deferred adjudication and the State does not offer it, there is no option other than entering an open plea to the trial court. Thus, the trial court summed up Counsel's strategy as "[Appellant] does not want to go to the penitentiary; therefore, we'll ask the Court for deferred adjudication. We'll ask for mercy from the Court. The way we'll do that is we'll plead guilty, accept responsibility."

The record augments the already strong presumption that trial counsel employed reasonable strategy and thus provided reasonable professional representation. To determine whether Appellant has rebutted that presumption, we now turn to his additional complaints about his counsel's representation.

*Counsel did not challenge the stop or the search as pretextual.*

Appellant faults Counsel for not challenging the stop or the search as a pretext because there was evidence that the window tint was within legal limits. He ignores, however, the trooper's second stated basis for the stop as set out in the complaint: "The vehicle also was also [sic] not inspected." Because Appellant offers no theory for challenging the stop on the basis of the truck not

15

having a valid inspection sticker, we presume that Counsel determined there was none.

Once the trooper made a valid stop on the basis of the truck's lack of a current inspection sticker, Appellant's and Garcia's nervousness, the image of the patron saint of drug smugglers, and most importantly their consent to search vitiate any claim that the search was pretextual. Counsel is not ineffective for failing to file a futile claim. *See Ex parte Chandler*, 182 S.W.3d 350, 356 (Tex. Crim. App. 2005); *Jackson v. State*, 973 S.W.2d 954, 957 (Tex. Crim. App. 1998) (to show ineffective assistance of counsel based on a failure to move to suppress evidence, an appellant must show that motion would have been granted).

Moreover, we've already held that the record shows that Appellant wanted deferred adjudication and that Counsel's strategy was to seek it for him. And as the trial court observed, "if you're going to ask for mercy from the Court by accepting responsibility for your actions, admitting guilt and asking for deferred, you're not going to file a bunch of pretrial motions to contest everything, because that's really not accepting responsibility and would hurt your chances of getting deferred adjudication."

We hold that Appellant's complaint about the stop does not support his claim that Counsel was ineffective. *See Chandler*, 182 S.W.3d at 356; *Jackson*, 973 S.W.2d at 957.

16

*Counsel did not move to re-weigh the marihuana without seeds and stems.*

Appellant contends that Counsel should have moved to reweigh the seized marihuana without seeds, stems, and packaging because a reweighing might have reduced the offense to a third-degree felony and thus have reduced his punishment exposure. There is no evidence in the record, however, that seeds, stems, and packaging were included when the DPS lab weighed the marihuana. To the contrary, our review of the record suggests that the marihuana might already have been cleaned before it was weighed in the lab. The DPS complaint stated that the weight of the seized drugs was "approximately 63 pounds." The subsequent lab report, however, listed a net weight of "52.15 pounds." Further, Appellant presented no evidence that reweighing actually would have resulted in a weight of less than fifty pounds.[2] *See Guijon v. State*, No. 14-06-01001-CR, 2007 WL 4165388, at *5 (Tex. App.—Houston [14th Dist] Nov. 20, 2007, no pet.) (mem. op., not designated for publication) (holding counsel not ineffective when he did not advise defendant of the option or file a motion to reweigh 5.1 pounds of marihuana without seeds or stalks when a weight under 5 pounds would have reduced the charge). Without evidence that a reweigh actually would have

---

[2]There is some speculation in the record, however. Self-reported "1977 University Interscholastic League Number Sense state champion" McKinnis testified that "[i]t's not uncommon to see up to a 5 percent decrease in the reduction of the usable amount of marihuana in a reweigh . . . . And 52 pounds, 5 percent of that is about 2.6 pounds, would have knocked it down to under 50 pounds, like 49.4 pounds[.]" Despite this display of mathematical acuity, Appellant has not shown that a reweigh actually would have reduced the charge.

reduced the severity of the offense with which Appellant was charged, we refuse to hold Counsel ineffective for failing to request one.

*Counsel did not request notice of the State's intent to offer extraneous acts evidence.*

At the punishment hearing, the trial court admitted photos from Appellant's cell phone. One of these is dated September 1 and depicts marihuana buds. Two pictures dated October 2 show a large quantity of United States currency. Appellant appears in one of these, smiling broadly, standing over a pile of money.

Appellant declares it a "huge error" for Counsel not to have made a request under rule 404(b) for timely notice of the State's intent to offer extraneous offense evidence because if he had, Counsel could have prepared for the State offering the photo from Appellant's cell phone showing marihuana buds which was dated a month before Appellant's arrest. The record shows, however, that a request for such notice was unnecessary because the State maintained an open file policy, the State provided Counsel with all the evidence introduced at trial, Appellant admitted at the punishment hearing that Counsel had shown him the photos on his cell phone before trial, and McKinnis testified at the hearing on the motion for new trial that all the photos had been submitted to the defense. This complaint, therefore, is without merit.

*Counsel did not seek to use testimony from the codefendant who supposedly accepted full responsibility.*

Appellant faults counsel for not calling Lorenzo Garcia to testify on his behalf because, according to Cavazos, Garcia said he was willing to take full responsibility for the offense. Notwithstanding the fact that one's willingness to accept full responsibility for an offense logically does not foreclose another's culpability, the record shows that Garcia was a fugitive. Given this fact, the trial court reasonably could have discredited Cavazos' testimony that Garcia was willing to take any responsibility for the offense. Moreover, the evidence admitted at the punishment hearing was sufficient to show Appellant's culpability. Finally, calling a codefendant to assume responsibility for an offense, while at the same time seeking a probated sentence by accepting responsibility for that offense, is strategically inconsistent. And as discussed previously, it is apparent from the record that Counsel's strategy was to obtain for Appellant deferred adjudication, which is the outcome the evidence shows Appellant wanted.

*Counsel did not try to suppress or mitigate the effects of incriminating photos found in Appellant's cell phone.*

Again, as stated by the trial court, "if you're going to ask for mercy from the Court by accepting responsibility for your actions, admitting guilt and asking for deferred, you're not going to file a bunch of pretrial motions to contest everything, because that's really not accepting responsibility and would hurt your chances of getting deferred adjudication." Not challenging the photos found in Appellant's cell phone, which was apparently seized incident to a lawful arrest, and for which

19

Appellant concedes a warrant was obtained, is, again, consistent with Counsel's apparent-from-the-record trial strategy of securing deferred adjudication for Appellant by having him assume responsibility and throw himself on the mercy of the court. Because Counsel reasonably could have decided not to seek suppression of the photos in effecting his apparent strategy, Appellant's complaint is groundless.

*Counsel did not tell Appellant that the sentencing judge had been a prosecutor.*

The record is devoid of any evidence that the trial judge, regardless of his background as a prosecutor, was biased or predisposed to assessing a harsh sentence. This complaint, therefore, is not grounded in the record.

*Counsel should not have allowed Appellant to testify.*

Responding to the argument that Counsel should not have allowed Appellant to testify, the trial court noted, "I don't know many cases in which they're accepting responsibility and asking for deferred and really expect it to be granted in which the defendant doesn't get up and testify." The record shows that Appellant's taking the stand was integral to Counsel's apparent strategy. The problem for Appellant is that the trial court did not believe him. Absent evidence that Counsel knew Appellant would lie, we will not fault Counsel for allowing him to testify.

*Counsel took no action to refute "the suggestion" that Appellant lied on the stand.*

As the following excerpts illustrate, the record shows more than a suggestion that Appellant lied.

[APPELLANT]: I didn't know there was nothing in the tires.

. . . .

[APPELLANT]: No. I knew there was something in them, but I didn't know where it was. He told me it was going to be a surprise. Because I told him I didn't want to know nothing about it, you know.

Q. Okay. So you didn't want to know the details, but you knew you were involved in a drug train.

A. Yes, ma'am.

Q. You knew that's what he was doing and that's what he was talking about when he said he was going to triple your money.

A. Yes, ma'am.

Q. And you agreed to that.

A. Yes, ma'am. Like I said, it was a mistake.

Q. All right. When is the first time you were involved in any kind of drug trade or large quantities of drugs?

A. I never done it.

Q. You'd never done it before—

A. No, ma'am.

Q. —October the 16th?

A. Well, that's the only time.

Q. That's the only time?

A. Yeah.

Q. When is the first time you saw those drugs that were in the tires?

A. I didn't ever see them before.

21

Appellant testified that he did not know anything about the drugs in his truck; then he testified that he made a mistake. The photo of marihuana buds taken with Appellant's cell phone a month before the arrest is inconsistent with his testimony that he did not know anything about the drugs and that he had never seen them before. Moreover, as pointed out by the State, the trial court's conclusion that Appellant lied on the stand came after the parties had rested and the evidence was concluded. It was reasonable, therefore, for Counsel not to risk alienating the trial judge by attempting to refute the trial court's conclusion, which was, after all, supported by Appellant's testimony.

*Counsel did not object to the State's alleged improper impeachment of Appellant by asking whether he had ever been arrested before.*

Appellant does not provide any argument to support his claim that Counsel should have objected to the State's "improper impeachment" of Appellant when the State asked if he had ever been arrested before. *See Vaughn v. State*, 931 S.W.2d 564, 566 (Tex. Crim. App. 1996) (an appellant must show that it would have been error for the trial court to overrule an objection to the admissibility of evidence). Nor does he point to any evidence in the record that Counsel's failure to object fell below professional norms. Moreover, the record is silent as to why Counsel did not object to this testimony. We will not declare a lawyer ineffective when his or her actions or omissions may have been based upon tactical decisions, but the record lacks specific explanations for counsel's actions. *See*

22

*Bone v. State*, 77 S.W.3d 828, 830 (Tex. Crim. App. 2002). Accordingly, we hold that this complaint does not support Appellant's claim.

*Counsel was unprepared for the State's cross-examination of Appellant.*

There is no evidence in the record that Counsel did not prepare for the State's cross-examination. Counsel was not called to testify, nor was anyone who worked with Counsel on the case called to testify about his preparation for cross-examination. Moreover, it is apparent from the record that Appellant lied on the stand. As Wohr agreed at the motion for new trial hearing, once a client takes the stand, an attorney has no control of whether he tells the truth or whether he lies. If Counsel was unprepared for the State's cross-examination of his dissembling client, the blame does not lie with Counsel. We will presume, absent evidence to the contrary, that Counsel did not know that his client would lie under oath, and we decline the invitation to hold a lawyer ineffective for not countering the State's exposure of his client's mendacity.

*Counsel did not request a presentence investigation report (PSI).*

Finally, Appellant's complaint that Counsel did not request a PSI is without merit. It is apparent that the trial court was familiar with Appellant's relatively clean criminal history, and there is no evidence in the record that Appellant was harmed by the failure of Counsel to request a PSI. To paraphrase the trial court, what harmed Appellant was lying on the stand, not the lack of a PSI.

In sum, we hold that the evidence in the record supports the trial court's rejection of Appellant's claim that he was entitled to a new trial on the basis of

ineffective assistance of counsel.  Accordingly, we overrule Appellant's second issue.

## VII. Conclusion

Having overruled both of Appellant's issues, we affirm the judgment of the trial court.

LEE GABRIEL
JUSTICE

PANEL:  GARDNER, MEIER, and GABRIEL, JJ.

DO NOT PUBLISH
Tex. R. App. P. 47.2(b)

DELIVERED:  May 12, 2011