

# NUMBER 13-15-00123-CR

# COURT OF APPEALS

# THIRTEENTH DISTRICT OF TEXAS

# CORPUS CHRISTI - EDINBURG

LUCAS MORIN,                                                           Appellant,

v.

THE STATE OF TEXAS,                                                Appellee.

### On appeal from the 156th District Court
### of Bee County, Texas.

# MEMORANDUM OPINION

### Before Chief Justice Contreras and Justices Longoria and Hinojosa
### Memorandum Opinion by Chief Justice Contreras

A jury convicted appellant Lucas Morin of possession of methamphetamine in the

amount of one gram but less than four grams, a third-degree felony. *See* TEX. HEALTH &

SAFETY CODE ANN. § 481.115(a), (b) (West, Westlaw through 2017 1st C.S.). The trial

court sentenced Morin to twenty-eight years' incarceration.[1]  By three issues, Morin contends that the evidence was insufficient to link him to the contraband, that his trial counsel rendered ineffective assistance, and that his previous appellate counsel was ineffective.  We affirm.

## I.  BACKGROUND

Detective Art Gamez with the Beeville Police Department testified that on September 3, 2014, at 2:00 a.m. while conducting surveillance of several rooms at a local Executive Inn used by John Michael Campos (Campos) for narcotics dealing, he observed Morin and his codefendants, Emily Arredondo (Emily), Amber Garcia (Garcia), and Joe Angel Arredondo (Joe), a suspected drug dealer, leaving the "known drug house, a known apartment" in a vehicle.[2]  Detective Gamez advised the patrol division to initiate a traffic stop of the vehicle.  Detective Gamez testified that he then observed the vehicle park at a local Walmart.  At this point, Detective Gamez returned to his surveillance duty and "left it up to the patrol division."

Sergeant Joshua Meakins of the Beeville Police Department testified that, after the vehicle left the Walmart parking lot, he initiated a traffic stop because he observed the driver commit several violations.  Sergeant Meakins stated that the driver stopped the vehicle at a local convenience store; when the vehicle stopped, Morin, who was seated in the back seat on the passenger side, "exited the vehicle and ran," and Sergeant Meakins chased after him.  Sergeant Meakins stated that when he apprehended Morin

---

[1] Morin's sentence was enhanced under the habitual felon statute requiring a minimum twenty-five-year sentence.  *See* TEX. PENAL CODE ANN. § 12.42(d) (West, Westlaw through 2017 1st C.S.).

[2] During Morin's case-in-chief, Campos's aunt claimed that Morin lived with Campos.  However, Sergeant Joshua Meakins testified that in the arrest report Morin stated he lived at a different residence and did not state that he lived at the Executive Inn with Campos.

2

he found a pipe in Morin's front right pocket that Morin acknowledged was his. Sergeant Meakins testified that the type of pipe found in Morin's possession is commonly used to smoke methamphetamine.[3] Sergeant Meakins stated that Emily drove the vehicle, Garcia sat in the front right passenger side of the vehicle, and Joe sat in the rear left passenger side.

Assistant Police Chief Richard Cantu Jr. testified that he arrived at the convenience store for backup after learning that Sergeant Meakins was involved in a foot pursuit. Chief Cantu explained that when he approached the vehicle he saw Joe sitting in the backseat on the left side, and in plain view, he saw a syringe that Joe attempted to conceal "underneath his right buttocks." Chief Cantu removed the syringe, secured it on top of the vehicle, and "observed a handgun immediately in front of [Joe] which was [in] the rear compartment of the driver's seat." During Chief Cantu's testimony, a picture admitted into evidence was shown to the jury of the back seat of the vehicle. Chief Cantu explained that he found the gun in the compartment behind the front seat and the "handle was sticking in the upright position."

Chief Cantu said, "After the occupants were removed from the vehicle . . . I then proceeded to do an instant search of the vehicle pursuant to arrest and as I was doing that, in plain view, I called it a middle console, but it was an area between the driver's seat and the passenger's seat [where] I observed a small clear plastic baggie containing white rock substance, and based on my experience and my training, that led me to believe it was methamphetamine." Chief Cantu agreed with the prosecutor that there was nothing

---

[3] John Berry, an officer with the Beeville Police Department, testified that Morin told him that the pipe found in his possession was used for smoking meth.

covering the compartment, and the trial court admitted a picture of the compartment showing it does not have a lid or a cover. Next to the baggie, Chief Cantu "observed a small glass instrument which appeared to be a smoke pipe." Chief Cantu agreed with the prosecutor that the baggie was "within arm's reach of all four of the people seated in the vehicle." Chief Cantu testified that, because the drugs were found within arm's reach of all the occupants of the vehicle, they were all arrested for possession.[4]

## II.    SUFFICIENCY OF THE EVIDENCE

By his first issue, Morin contends that the evidence is legally insufficient to support that he intentionally or knowingly possessed the methamphetamine because there is no evidence linking him to the contraband. *See Roberson v. State*, 80 S.W.3d 730, 735 (Tex. App.—Houston [1st Dist.] 2002, pet. ref'd).

## A.    Standard of Review and Applicable Law

In evaluating the legal sufficiency of the evidence, we must view the evidence in the light most favorable to the verdict and determine whether any rational trier of fact could have found the essential elements of the offense beyond a reasonable doubt.[5] *Brooks v. State*, 323 S.W.3d 893, 899 (Tex. Crim. App. 2010) (plurality op.). "A person may not be convicted of possession of a controlled substance, as a principal actor, unless (1) he exercised actual care, control, or custody of it, and (2) he was conscious of his

---

[4] Roman Gonzales Jr. with the Texas Department of Public Safety crime lab testified that the baggie found in the vehicle had 2.30 grams of methamphetamine.

[5] We measure the sufficiency of the evidence by the elements of the offense as defined by a hypothetically correct jury charge. As indicted in this case, a person commits the offense of possession of a controlled substance if the person knowingly or intentionally possesses a controlled substance listed in Penalty Group 1 of the Texas Health and Safety Code. *See* TEX. HEALTH & SAFETY CODE ANN. § 481.115(a), (b) (West, Westlaw through 2017 1st C.S.). Methamphetamine is listed as a controlled substance in Penalty Group 1. *See id.* § 481.102(6) (West, Westlaw through 2017 1st C.S.).

4

connection with it and knew what it was." *Roberson*, 80 S.W.3d at 734–35 (citing *Brown v. State*, 911 S.W.2d 744, 747 (Tex. Crim. App. 1995)). Exclusive possession of the drug is not required. *Id.* at 735 (citing *Harvey v. State*, 487 S.W.2d 75, 77 (Tex. Crim. App. 1972)). Mere presence at a place where contraband is being used or possessed by others does not justify finding that a person is in joint possession or is a party to an offense. *Id.*

"When, as here, the accused is not in exclusive possession of the place where contraband is found, there must be additional independent facts and circumstances which affirmatively link the person to the contraband in such a way that it can be concluded that the accused had knowledge of the contraband and exercised control over it." *Id.*; *see Poindexter v. State*, 153 S.W.3d 402, 405–06 (Tex. Crim. App. 2005). A reasonable inference can be made from an affirmative link that the accused knew of the contraband's existence and exercised control over it. *Roberson*, 80 S.W.3d at 735 (citing *Johnson v. State*, 658 S.W.2d 623, 627 (Tex. Crim. App. 1983); *Dickerson v. State*, 866 S.W.2d 696, 700 (Tex. App.—Houston [1st Dist.] 1993, pet. ref'd)).

Texas courts have recognized many non-exhaustive factors that may, either singly or in combination, show the accused's affirmative link to contraband. *Id.* "[T]he number of linking factors present is not as important as the 'logical force' they create to prove that the crime was committed." *Id.* Such factors include, among others: (1) the defendant's presence when a search was conducted; (2) whether the contraband was in plain view; (3) the defendant's proximity to and the accessibility of the narcotics; (4) whether the defendant attempted to flee; (5) whether other contraband or paraphernalia were present;

and (6) whether the conduct of the defendant indicated a consciousness of guilt. *Evans v. State*, 202 S.W.3d 158, 162 n.12 (Tex. Crim. App. 2006).

**B.    Analysis**

The additional independent facts and circumstances here show that Detective Gamez saw Morin leaving a known "drug house" with a suspected drug dealer. Thereafter, Morin was found in a vehicle that contained methamphetamine, which Chief Cantu found in plain view within Morin's reach. *See Tate v. State*, 500 S.W.3d 410, 417 (Tex. Crim. App. 2016) (finding a link when the drugs and syringe were in plain view and conveniently accessible to the appellant). Sergeant Meakins initiated the traffic stop of the vehicle, and when the vehicle stopped, Morin exited the vehicle and attempted to flee. *See Evans*, 202 S.W.3d at 162 n.12 (listing the defendant's attempt to flee as an affirmative link). Sergeant Meakins found a pipe for smoking methamphetamine in Morin's pocket that Morin acknowledge belonged to him. *See id.* (setting out that factor that may show an affirmative link to contraband includes whether drug paraphernalia is present). In addition, evidence was presented that Morin lived with Campos, the person who Detective Gamez was investigating for dealing drugs at the Executive Inn. Morin did not tell Sergeant Meakins that he lived with Campos and instead said he lived at another residence—evidence supporting a finding that Morin lied to Sergeant Meakins and which leads to a reasonable inference that Morin had a consciousness of guilt. *See id.* (providing that a consciousness of guilt may link the defendant to the contraband).

We conclude that the logical force of the evidence is sufficient to affirmatively link Morin to the contraband. *See Roberson*, 80 S.W.3d at 735. Under these circumstances, the evidence established that Morin exercised care, control, and management over the

6

contraband and knew that the substance was contraband. *See id.* at 734–35. Thus, viewing the evidence in the light most favorable to the verdict, a rational trier of fact could have found beyond a reasonable doubt that Morin committed the offense of possession of a controlled substance. *See Brooks*, 323 S.W.3d at 899. The evidence is therefore sufficient to support the verdict. *See id.* We overrule appellant's first issue.

### III.    INEFFECTIVE ASSISTANCE OF COUNSEL

By his second issue, Morin contends that his trial counsel rendered ineffective assistance by failing to call a necessary witness. By his third issue, Morin contends that his previous appellate attorney rendered ineffective assistance by failing to pursue an evidentiary hearing on Morin's pro se motion for new trial.

### A.    Standard of Review and Applicable Law

An ineffective assistance of counsel claim is evaluated under the two-part test articulated by the United States Supreme Court in *Strickland v. Washington*, requiring that (1) the appellant show that counsel's performance was deficient, or that counsel's assistance fell below an objective standard of reasonableness and (2) there is a reasonable probability that, but for counsel's errors, the result would have been different. *Thompson v. State*, 9 S.W.3d 808, 812 (Tex. Crim. App. 1999) (citing *Strickland v. Washington*, 466 U.S. 668 (1984)). In determining the validity of the appellant's claim of ineffective assistance of counsel, "any judicial review must be highly deferential to trial counsel and avoid the deleterious effects of hindsight." *Id.* at 813.

The burden is on the appellant to prove ineffective assistance of counsel by a preponderance of the evidence. *Id.* The appellant must overcome the strong presumption that counsel's conduct fell within the wide range of reasonable professional

7

assistance and that his actions could be considered sound trial strategy. *See Strickland*, 466 U.S. at 689; *Jaynes v. State*, 216 S.W.3d 839, 851 (Tex. App.—Corpus Christi 2006, no pet.). A reviewing court will not second-guess legitimate tactical decisions made by trial counsel. *State v. Morales*, 253 S.W.3d 686, 696 (Tex. Crim. App. 2008) ("[U]nless there is a record sufficient to demonstrate that counsel's conduct was not the product of a strategic or tactical decision, a reviewing court should presume that trial counsel's performance was constitutionally adequate . . . ."). Counsel's effectiveness is judged by the totality of the representation, not by isolated acts or omissions. *Thompson*, 9 S.W.3d at 813; *Jaynes*, 216 S.W.3d at 851. An allegation of ineffectiveness must be firmly founded in the record, and the record must affirmatively demonstrate the alleged ineffectiveness. *Ex parte Martinez*, 330 S.W.3d 891, 901 (Tex. Crim. App. 2011); *Bone v. State*, 77 S.W.3d 828, 835 (Tex. Crim. App. 2002); *Thompson*, 9 S.W.3d at 814 (setting out that "in the vast majority of cases, the undeveloped record on direct appeal will be insufficient for an appellant to satisfy the dual prongs of *Strickland*"); *see Jackson v. State*, 877 S.W.2d 768, 771–72 (Tex. Crim. App. 1994) (en banc) (stating that "we must presume that counsel is better positioned than the appellate court to judge the pragmatism of the particular case, and that he made all significant decisions in the exercise of reasonable professional judgment" and that "[d]ue to the lack of evidence in the record concerning trial counsel's reasons" for the alleged ineffectiveness, the court was "unable to conclude that appellant's trial counsel's performance was deficient") (internal quotations omitted).

## B. Exculpatory Witness

Morin argues that his trial counsel was ineffective by failing to fully investigate the alleged recipient of a confession made by Emily or to call that person to testify.

Specifically, Morin claims that Emily wrote a confession letter to the Beeville Police Department, and his trial counsel failed to call the witness who received the letter. However, no evidence was presented to the trial court that Emily wrote the letter or that she sent the letter to the Beeville Police Department. Morin merely points out that his trial counsel asked Emily if she had written a letter to the Beeville Police Department, but Emily invoked her fifth amendment right to silence and did not answer this question. *See Madden v. State*, 242 S.W.3d 504, 514 (Tex. Crim. App. 2007) ("It is only answers that are evidence and may create a dispute."); *Johnston v. State*, 230 S.W.3d 450, 456 n.6 (Tex. App.—Fort Worth 2007, no pet.) (explaining that defense counsel's questions do not constitute evidence). In addition, Morin points to Garcia's testimony that Emily wrote a letter. However, Garcia testified that she was asleep when Emily allegedly wrote a letter, and she was not aware of the contents of the letter. Finally, Morin points to his pro se motion for new trial that asserted that Emily's confession was faxed to "Lt. Bernal" of the Beeville Police Department. However, there is no evidence in the record supporting the assertion that Emily faxed a letter to "Lt. Bernal."

As nothing in the record supports Morin's claims that Emily sent a letter to the Beeville Police Department exonerating him or confessing to the charged offense, we conclude that Morin has not met his high burden of showing that his trial counsel's performance was deficient in this regard.[6] We overrule Morin's second issue.

---

[6] We note that Morin attached a letter to his pro se motion for new trial allegedly written by Emily stating, "I take full responsibility for the meth . . . found 9-3-14 in the car" and that Morin and the other occupants of the vehicle "had nothing like myself." However, a motion for new trial is not self-proving, and an attachment, even an affidavit, to a motion for new trial is merely "'a pleading that authorizes the introduction of supporting evidence' and is not evidence itself." *Jackson v. State*, 139 S.W.3d 7, 20 (Tex. App.—Fort Worth 2004, pet. ref'd). Accordingly, we are unable to conclude on this record that the letter constitutes evidence supporting Morin's ineffective assistance claim. *See id.* And, even assuming that Emily wrote the letter, there is no evidence that she sent it to "Lt. Bernal" or the Beeville Police Department.

## C.    Pro se Motion for New Trial

By his third issue, Morin argues that his previous appellate counsel was ineffective by failing to present his pro se motion for new trial to the trial court. However, when Morin filed his pro se motion for new trial, he was represented by counsel. Thus, Morin's filing of a pro se motion for new trial constituted hybrid representation.

A defendant has no right to hybrid representation, and "as a consequence, a trial court is free to disregard any pro se motions presented by a defendant who is represented by counsel." *Robinson v. State*, 240 S.W.3d 919, 922 (Tex. Crim. App. 2007). In addition, "a trial court's decision not to rule on a [hybrid] motion [is] not subject to [appellate] review. . . ." *Id.* Accordingly, Morin is unable to show that his previous appellate counsel was deficient by failing to present his pro se motion for new trial to the trial court as the there is nothing in the record showing that the trial court would have allowed hybrid representation or would have ruled on the motion. *See Thompson*, 9 S.W.3d at 814. Moreover, the record is silent regarding Morin's previous appellate counsel's reasons for declining to do so. Therefore, we must presume that counsel's conduct was the product of a strategic or tactical decision and constitutionally adequate. *Morales*, 253 S.W.3d at 696. We overrule Morin's third issue.[7]

---

[7] Given that "[t]he reasonableness of counsel's choices often involve facts that do not appear in the appellate record," "[a] petition for writ of habeas corpus usually is the appropriate vehicle to investigate ineffective-assistance claims." *Mitchell v. State*, 68 S.W.3d 640, 642 (Tex. Crim. App. 2002) (en banc). "In most ineffective[-]assistance claims, a writ of habeas corpus is essential to gathering the facts necessary to adequately evaluate such claims." *Ex parte Torres*, 943 S.W.2d 469, 475 (Tex. Crim. App. 1997); *see also Thompson v. State*, 9 S.W.3d 808, 813 (Tex. Crim. App. 1999) ("A substantial risk of failure accompanies an appellant's claim of ineffective assistance of counsel on direct appeal. Rarely will a reviewing court be provided the opportunity to make its determination on direct appeal with a record capable of providing fair evaluation of the merits of the claim . . . .").

## IV.   CONCLUSION

We affirm the trial court's judgment.

DORI CONTRERAS
Chief Justice

Do not publish.
TEX. R. APP. P. 47.2(b).

Delivered and filed the
31st day of January, 2019.